In the Matter of **SOUND RADIO, INC.,** t/a **WNJR Radio 1430, a corporation of New Jersey.**

Civ. A. No. 89-1726.

United States District Court, D. New Jersey.

Aug. 2, 1989.

Kleinberg, Moroney, Masterson & Schachter, Millburn, N.J., for Sound Radio, Inc.

Kalb, Friedman, Siegelbaum and Moran, Roseland, N.J., for Plan Proponent Daniel Robinson.

Kirsten, Simon, Friedman, Allen, Cherin & Linken, Newark, N.J., for Rollins Comm. Inc.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for Sarco Comm., Inc. and Danny Stiles.

Markowitz and Zindler, Lawrenceville, N.J., for Lebow Comm.

Lehman, Wasserman & Jurista, Millburn, N.J., for Official Unsecured Creditors Committee.

Heher, Clark & St. Landau, E. Princeton, N.J., for Shareholder Class.

## OPINION

LIFLAND, District Judge.

Presently before the court is an appeal by Daniel Robinson from an order of the United States Bankruptcy Court confirming appellees' reorganization plan (herein "Sarco plan"). 93 B.R. 849. Having heard oral argument and having reviewed the entire record, this court affirms in part and remands in part for additional findings of fact.

## FACTUAL BACKGROUND

On January 5, 1989, the Bankruptcy Court entered an order confirming the Sarco plan and rejecting appellant's reorganization plan (herein "Robinson plan"). Both plans sought to reorganize the debtor corporation, Sound Radio, Inc., t/a WNJR Radio. The debtor is a minority owned and operated A.M. radio station that broadcasts primarily in the greater Newark, New Jersey metropolitan area.

In confirming the Sarco plan over the Robinson plan, the Bankruptcy Court found that both plans met the Bankruptcy Code's feasibility and good faith requirements. However, it found that "[o]n balance, the proposed Sarco plan is the stronger and the more likely to be successful." Op. at 22.

Appellant presently seeks the reversal of the Bankruptcy Court's order and an order confirming the Robinson plan. Particularly, appellant argues that the Bankruptcy Court erred when it found that the Sarco plan was feasible and proposed in good faith.

## STANDARD OF REVIEW ·

It is well settled that this court applies a clearly erroneous standard to findings of basic and inferred fact but conducts plenary review of legal conclusions. As stated in *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222–1233 (3d Cir.1989), citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102–103 (3d Cir.1981).

Basic facts are the historical and narrative events presented for the court's determination. Inferred factual conclusions are drawn from basic facts and are permitted only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts.... [C]ourts must apply a clearly erroneous standard to findings of basic and inferred facts.

In contrast, an ultimate fact is a legal concept with a factual component and is usually expressed in the language of a standard enunciated by caselaw rule or by statute ... (citations omitted). When reviewing an ultimate finding, this court must accept the trial court's findings of historical or narrative facts unless they are clearly erroneous, but [it] must exercise a plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.

Appellant argues that this court is compelled to conduct a plenary review of all of the Bankruptcy Court's findings, while appellees contend that a clearly erroneous standard is applicable.

## DISCUSSION

11 U.S.C. § 1129(a)(11) requires the Bankruptcy Court to find that:

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless liquidation or reorganization is proposed in the plan.

■ The purpose of § 1129(a)(11) "is to prevent confirmation of visionary schemes that promise creditors and equity security holders more under a proposed plan than the debtor could possibly attain after confirmation." *Matter of Landmark at Plaza Park, Ltd.*, 7 B.R. 653, 659 (D.N.J.1980),

citing 5 *Collier on Bankruptcy*, para. 1129.02 (15th ed. 1980). In effect, the bankruptcy judge is required to find that the debtor will be able to make all of its payments under the plan and to comply with the plan. *In re Snider Farms*, 83 B.R. 1003 (N.D.Ind.1988). Further, the bankruptcy judge is required to find that the plan provides reasonable assurance that the debtor will remain commercially viable for a reasonable time. *In re Great Northwest Recreation Center, Inc.*, 74 B.R. 846, 852 (D.Mont.1987).

Appellant claims that the Sarco plan has insufficient funding to make all the payments required under the plan. Appellant contends that the Bankruptcy Court erroneously found that certain bank loans are available to fund the Sarco plan and, alternatively, even if those loans are available, the plan's income projections cast doubt on the debtor corporation's ability to service its long-term debt. Appellant also claims that the Sarco plan was proposed in bad faith.

The Bankruptcy Court found that Howard Savings Bank had approved a $2 million loan to Rafael Diaz, and that Banco Popular of Puerto Rico had approved a $1.25 million loan to Hugh McComes. It found that both loans would be used to fund the Sarco plan, the Howard Savings loan directly and the Banco Popular loan through McComes' investment in the debtor corporation. Since these are findings of fact, this court will apply the clearly erroneous standard in evaluating these findings.

Mr. Diaz, who is president of Sarco Communications, Inc., testified that the Howard Savings loan is "going to be a five to six-year loan, repaying interest only the first year and then make an escalation of the payment of the principal plus interest starting the second year. But there is no breakdown yet because we don't know if we are going to get the [F.C.C.] license. So the bank has to make their agreement in their loan with all the specifications but this is what I discussed with them."

Also, Edward M. Sweeney, vice president and loan officer at the Howard Savings Bank, testified that the loan was approved, although he was unclear whether the bank would ask for new income projections if the loan closing was significantly delayed. He also testified that the loan requires that Diaz act as guarantor. Further, a letter dated August 3, 1987 from Sweeney to Diaz informs Diaz that the $2 million loan was approved "subject to terms and conditions as set forth in a commitment letter being drawn up by our attorneys." While a commitment letter was never produced, Sweeney testified that the loan was "approved" and that a commitment letter was not necessary to close on the loan.

The Bankruptcy Court also found that the Sarco plan had access to a $1.25 million investment by Hugh McComes. The money was made available to McComes through a loan by Banco Popular of Puerto Rico. A letter dated October 19, 1987, signed by Ms. Mary Jo Silva, a loan officer at Banco Popular, informs McComes that the $1.25 million loan had been approved, and that the loan "will be used towards the purchase of the license and broadcasting facilities of WNJR ..." Also, the terms of the loan reveal that the purpose of the loan is to "acquire WNJR."

Diaz testified that McComes secured the Banco Popular loan and, while there is no evidence of a writing memorializing this agreement, Diaz testified further that McComes was going to invest the $1.25 million in the debtor corporation in exchange for equity in the corporation, although the details had not been finalized. Also, Miguel Ripoll, vice president of corporate banking at Banco Popular, testified that the $1.25 million loan to McComes was conditioned upon McComes "getting the station."

■ On the record as a whole, it is clear that the Bankruptcy Court did not err in finding that the Sarco proponents had access to funding through the Howard Savings loan and the McComes investment. While there is no evidence of a "commitment" by Howard Savings, it is clear that the $2 million loan was approved and available. Also, while there is no written agreement between McComes and Diaz regarding McComes' investment of the proceeds of the $1.25 million Banco Popular loan in the debtor corporation, it is clear that the

loan to McComes is conditioned upon that investment. Therefore, this court affirms the Bankruptcy Court's findings regarding the availability of funding for the Sarco plan.

However, a bankruptcy judge is required to look beyond the initial funding of a reorganization plan and predict with reasonable assurance the commercial viability of the plan. *In re Snider Farms*, 83 B.R. 1003 (N.D.Ind.1988); *In re Great Northwest Recreation Center, Inc.*, 74 B.R. 846 (D.Mont.1987); *In re Trail's End Lodge*, 54 B.R. 898 (D.Vt.1985); *In re Landmark at Plaza Park, Ltd.*, 7 B.R. 653 (D.N.J.1980).

The Bankruptcy Court found that "[i]t is clear from the testimony that the market is broadening and that the debtor may anticipate a reasonable growth." Under § 1129(a)(11), all that is required is a "reasonable" prospect for financial stability and success. *In re Prudential Energy Co.*, 58 B.R. 857, 862 (S.D.N.Y.1986). All income projections must be based on concrete evidence of financial progress, and must not be speculative, conjectural or unrealistic. *In re Merrimack Valley Oil Co., Inc.*, 32 B.R. 485, 489 (D.Mass.1983). Additionally, the bankruptcy judge must be satisfied that the proponent will have available credit and the ability to meet capital expenditures. *In re Prudential Energy, Co., supra.*

While the Sarco proponents submitted a financial plan and testimony was presented supporting its accuracy, the Bankruptcy Court's opinion makes no explicit finding as to whether the debtor's profits will enable it to service the debtor's concededly large debt over a reasonable time.[1] This court "may not substitute its own findings for those of the primary tribunal merely because it finds other inferences more likely." *Universal Minerals, Inc.*, 669 F.2d at 104. Likewise, this court should not make findings in the first instance. Accordingly, it must remand this matter back to the Bankruptcy Court for findings on this issue and the impact of those findings on the feasibility of the Sarco plan. Plenary review

of the conclusion of the "ultimate fact" of feasibility, if reached by the Bankruptcy Court, must await its finding of "historical or narrative facts" on the issue of ability to service its debt. *See In re Sharon Steel Corp., supra.*

There is nothing in the record to suggest that the Sarco proponents proposed their plan in bad faith. Therefore, the Bankruptcy Court did not err in finding that the Sarco plan was proposed in good faith.

An order is filed herewith.

### ORDER

This matter is before the Court on appeal by Daniel Robinson from an order of the United States Bankruptcy Court. Having heard oral argument and having reviewed the moving papers and for the reasons contained in the accompanying Opinion,

IT IS on this 2nd day of August, 1989, ORDERED that the order of the Bankruptcy Court is affirmed in part and the matter is remanded in part.

---

1. There is evidence in the record on this issue; testimony by Victor Favino, an accountant, may support a finding that the Sarco plan has projected the cash flow necessary to service the debt.