**In re DOW CORNING CORPORATION, Debtor.**

**Bankruptcy No. 95–20512.**

United States Bankruptcy Court, E.D. Michigan, Northern Division.

Dec. 1, 1999.

### AMENDED OPINION ON
### GOOD FAITH

ARTHUR J. SPECTOR, Chief Judge.

The Debtor and the Official Committee of Tort Claimants negotiated and on November 9, 1998 filed a Joint Plan of Reorganization. The plan (hereafter referred to simply as the "Plan") was subsequently amended on February 4, 1999 and modified various times. The hearing on confirmation of the Plan commenced on June 28, 1999 and closing arguments were heard on July 30, 1999. Several post-hearing briefs and other submissions were received and the Court took the matter under advisement.

On this date the Court issued its Findings of Fact and Conclusions of Law on the matter of the confirmation of the Plan. This opinion is one of several which will serve to supplement and explicate some of the findings and conclusions. At least one opinion will follow later.

A general overview of the Plan's terms is contained in the opinion on classification and treatment issues. When necessary, additional Plan terms are explained here. Except when otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

A number of parties objected to confirmation of the Plan on the ground that the Proponents failed to satisfy the requirements of § 1129(a)(3). For the reasons which follow, the Court finds that the Plan was filed in good faith and not by any means forbidden by law.

The Bankruptcy Code does not define the term "good faith." Courts have taken a variety of approaches when applying it. *See Tenn–Fla Partners v. First Union National Bank of Florida,* 229 B.R. 720, 734 (W.D.Tenn.1999) (explaining three different approaches). This is not surprising, however, for it is difficult to place precise boundaries around such a fuzzy concept. *Laguna Assoc. Ltd. Partnership v. Aetna Cas. & Surety Co. (In re Laguna Assoc. Ltd. Partnership ),* 30 F.3d 734, 738 (6th Cir.1994)("[G]ood faith is an amorphous notion, largely defined by factual inquiry." (quoting *In re Okoreeh–Baah,* 836 F.2d 1030, 1033 (6th Cir.1988)).

■■■ Several courts borrow the concept of good faith from jurisprudence under §§ 362(d)(1) and 1112(b) of the Bankruptcy Code. Those sections focus primarily on the debtor's pre-petition conduct. By the time a case reaches the plan confirmation stage, pre-petition behavior is largely irrelevant. Instead, when considering whether a plan satisfies the § 1129(a)(3) requirement, the focus of the court must be on the plan itself. *In re Madison Hotel Assoc.,* 749 F.2d 410,

425 (7th Cir.1984). This issue is whether the plan "will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *Id. See also Hanson v. First Bank of South Dakota,* 828 F.2d 1310, 1315 (8th Cir.1987) (quoting *In re Toy & Sports Warehouse, Inc.,* 37 B.R. 141, 149 (Bankr.S.D.N.Y.1984)); *In re Resorts Int'l, Inc.,* 145 B.R. 412, 469 (Bankr.D.N.J.1990); *In re Apex Oil Co.,* 118 B.R. 683, 703 (Bankr.E.D.Mo. 1990); *In re White,* 41 B.R. 227, 229 (Bankr.M.D.Tenn.1984); *In re Nikron, Inc.,* 27 B.R. 773, 778 (Bankr.E.D.Mich. 1983) (Brody, J.) ("A plan is proposed in good faith 'when there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.' ") (citation omitted).

One court explained the rationale for this standard this way:

[§ 1129(a)(3)] reads as follows: "The court shall confirm a plan only if all of the following requirements are met: (3) The plan has been *proposed* in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3) (emphasis added). Thus, it is the plan's *proposal* which must be (a) in good faith and (b) not by a means forbidden by law.

> [T]he purpose of 1129(a)(3) was to insure that the *proposal* of a plan of reorganization was to be done in good faith and not in a way that was forbidden by law. Indeed one commentator, in comparing Section 1129(a)(3) with its predecessor sections under the Bankruptcy Act, has indicated that the focus of 1129(a)(3) is upon the conduct manifested in obtaining the confirmation votes of a plan of reorganization and not necessarily on the substantive nature of the plan.

*In re Sovereign Group, 1984–21 Ltd.,* 88 B.R. 325, 328 (Bankr.D.Colo.1988) (citing 5 *Collier on Bankruptcy* ¶ 1129.02 (15th ed.1984)).

*In re Food City, Inc.,* 110 B.R. 808, 811–12 (Bankr.W.D.Tex.1990). We believe that

the Sixth Circuit concurs in this analysis. *See In re Okoreeh–Baah*, 836 F.2d at 1033 ("The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.").

▇▇▇ Moreover, in our view, placing the amorphous concept of good faith outside the confines of all of the other elements for confirmation of the plan, even outside § 1129(b)'s cramdown requirements, is intended to allow courts to utilize their gut feeling about a plan's effects:

We have always been reluctant to seize upon "good faith" as an easy way out of confirming a difficult or questionable plan. We believe that a finding of lack of good faith in proposing a plan ought to be extraordinary and should not substitute for careful analysis of other elements necessary for confirmation. Haines, *Good Faith: An Idea Whose Time Has Come and Gone*, Norton Bankruptcy Law Adviser (April 1988). However, we also believe that a court of equity must use all of its senses to determine whether a proposed course is fair and equitable. A bankruptcy judge is more than a pair of ears to hear the argument and a pair of eyes to read the law. Furthermore, the mind, which may tell us intellectually that there is nothing technically "illegal" in a particular course of action, is not always the final arbiter. Sometimes a bankruptcy judge's nose tells him/her that something doesn't smell right and further inquiry is warranted. (Others may call this "common sense.") As a human being, a bankruptcy judge may allow the heart to influence a decision even though, as a judge, he/she should beware not to let emotions stand in the way of justice. Sometimes, a bankruptcy judge's stomach may turn, when he/

she is preparing to sign a particular judgment or order. This queasiness is reflective of the judge's sense that for some, perhaps inarticulable, reason, it just isn't right to grant the relief requested. In the context of plan confirmation in bankruptcy cases, when this is the way the judge feels, it may be because the plan has not "been proposed in good faith." In short, the reading of the law should be tempered by the judge's sense of equity—what is *just* in the circumstances of the case. If there are objective facts to support this feeling, perhaps the plan should not be confirmed.

*In re John P. Timko et al.*, No. 87–09318 (unpublished) (Bankr.E.D.Mich. July 22, 1988). For a plan where this test is put to use *see In re Barr*, 38 B.R. 323, 325 (Bankr.E.D.Mich.1984) (Bernstein, J.) ("At this stage the maxim 'be just before being generous' is called to mind. Mr. E. Barr's generosity to his family members would, if approved by this Court, result in a discharge of close to one million dollars of unsecured debts. That is simply unacceptable when for all practical purposes the Debtors continue to manage their same business. No amount of refined (or strained) analysis can still the moral outrage that the Debtors' plan triggers. At some point, a court of equity has to say, no, this cannot be.... If 'good faith' is to have any moral significance, the Debtors' plan cannot be found to be deserving of that appellation."). Thus, courts frequently do and ought to reject sloppy reliance on good faith to cover all sorts of more specific objections covered by specific confirmation standards.

▇▇ Applying this standard to facts of the instant case after carefully reviewing the Plan and the entire record, the Court finds that the Proponents of the Plan have met their burden of showing that the Plan was proposed and formulated in "good faith" under § 1129(a)(3). The Plan was proposed in a legitimate effort to rehabilitate a solvent but financially-distressed

corporation, besieged by massive pending and potential future product liability litigation against it—an articulated policy objective of chapter 11. A plan proposed as a means to resolve tort liability claims does not violate the § 1129(a)(3) "good faith" confirmation requirement. *See, e.g., In re Johns–Manville Corp.*, 68 B.R. 618, 632 (Bankr.S.D.N.Y.1986). The evidence is clear that the legal costs and logistics of defending the worldwide product liability lawsuits against the Debtor threatened its vitality by depleting its financial resources and preventing its management from focusing on core business matters. *See In re Dow Corning Corp.*, 211 B.R. 545, 552–553 (Bankr.E.D.Mich.1997). The Debtor "is a real company with real debt, real creditors and a compelling need to reorganize in order to meet these obligations" and is therefore, exactly the type of debtor for which chapter 11 was enacted. *See In re Johns–Manville Corp.*, 36 B.R. 727, 730 (Bankr.S.D.N.Y.1984). As testified by Tommy Jacks, Arthur B. Newman, Scott Gilbert and Ralph Knowles, the Plan was the result of intense arm's-length negotiations between parties represented by competent counsel who were guided by an experienced Court-appointed mediator and the findings and recommendations of highly qualified experts. The Plan incorporates procedures to effectively resolve the multitude of tort claims that drove the Debtor into bankruptcy and will allow the Debtor to emerge from bankruptcy as a viable corporation with the ability to pay its creditors the full amount to which they are entitled, to continue providing a return for its stockholders, to pay taxes to the federal government and to innumerable state and local governments, and to provide jobs for its employees. This is exact-ly the result envisioned by the drafters of chapter 11.

The Official Committee of Unsecured Creditors ("U/S CC") was among the parties who objected on good-faith grounds. Its arguments are basically no more than attempts to revisit and reargue objections it made to the Plan under other provisions. Its claim that the Plan unjustly enriches the Debtor's shareholders at the expense of the unsecured commercial creditors by not paying them according to their legal entitlements is just another way of arguing that the commercial creditors are entitled to postpetition interest at their contract rate. This issue has already been disposed of in two other opinions by this Court.[1]

Similarly, the U/S CC's § 1129(a)(3) objection, based on the allegedly improper so-called "third-party releases" is and will be more appropriately addressed and disposed of in another separate opinion of the Court.

Likewise, the U/S CC's § 1129(a)(3) objection based on the Plan's payment of allegedly invalid and unenforceable claims merely reiterated the arguments it made under its § 502(b) objection. That objection was overruled in yet another separate opinion.

▇ Like the other objections, the U/S CC's fourth and fifth objections, arguing that the process by which the Plan was formulated and proposed was "inequitable, unconscionable and impermissible" and that the Plan "contains inequitable, unconscionable and impermissible terms and conditions" rely on arguments made in support of objections under §§ 1129(a)(1), (2), and (7), as well as other arguments that were separately decided by the Court,

---

1. Moreover, § 726(a)(6), which is implicated under § 1129(a)(7)(ii), expressly permits a distribution to the debtor where all allowed claims have been paid in full with interest at the legal rate. A plan that distributes property to a solvent debtor's shareholders in compliance with the Bankruptcy Code's distribution scheme cannot be said to unjustly enrich them. *See In re Sound Radio, Inc.*, 93 B.R. 849, 854 (Bankr.D.N.J.1988), *aff'd in part & remanded in part on other grounds*, 103 B.R. 521 (D.N.J.1989), *aff'd* 908 F.2d 964 (3d Cir. 1990) (citation omitted) (favorably citing a case which "held that a plan which proposes to pay all creditors in full [is], on its face, submitted in good faith").

and will be discussed in greater detail in an opinion to be released in the future. In essence, the U/S CC argues that the Plan as formulated and proposed is inequitable because it treats the unsecured commercial creditors less favorably than a previous plan by not paying them postpetition interest at their contract rate. This objection was sustained in this Court's opinion on cramdown of Class 4 and is rendered moot by the Plan's self-correcting mechanism. Moreover, the "good-faith" determination under § 1129(a)(3) is to be made with regard only to the plan proposed to be confirmed and without regard to any prior plans. *See In re Sound Radio, Inc.,* 93 B.R. 849, 854 (Bankr.D.N.J.1988), *aff'd in part and remanded in part on other grounds,* 103 B.R. 521 (D.N.J.1989), *aff'd* 908 F.2d 964 (3rd Cir.1990) ("The plain meaning of § 1129(a)(3) has nothing to do with prior plans, but rather with the plan which is presently before the court.").

Therefore, because the Court has disposed of all the U/S CC's objections on which its § 1129(a)(3) objection is based, and because the Plan advances the policy objectives of chapter 11, § 1129(a)(3) is satisfied.