**In re SOVEREIGN GROUP, 1984–21 LTD., d.b.a. Conifer Landing Apartments, Debtor.**

**No. 86 B 00278 C.**

United States Bankruptcy Court, D. Colorado.

June 13, 1988.

Garry R. Appel, Rothgerber, Appel, Powers & Johnson, Denver, Colo., for plaintiff.

Steven L. Zimmerman, Zimmerman and Schwartz, P.C., Denver, Colo., for the trustee.

William G. Horlbeck, Scheid & Horlbeck, Denver, Colo., for Federal Nat. Mortg. Ass'n.

Robert L. Preeo, Elrod, Katz, Preeo & Look, P.C., Denver, Colo., for Harry S. Holtze, Jr., John S. Holtze, David R. Holtze, Holtze Management Corp. and Holtze Pikeview Venture.

Edward P. Timmins, Otten, Johnson, Robinson, Neef & Ragonetti, Denver, Colo., for Deilwydd Properties 403, Ltd., and Sovereign Group, Inc.

### ORDER ON REPLACEMENT OF GENERAL PARTNER IN A PLAN OF REORGANIZATION

PATRICIA ANN CLARK, Bankruptcy Judge.

This matter comes before the Court on the motion of Pikeview Venture (Pikeview), the sole general partner of the debtor, to abate confirmation proceedings in the Chapter 11 bankruptcy of Sovereign Group, 1984–21 Ltd. (Sovereign Group). This Court granted the motion to abate confirmation proceedings pending a final deter-

mination of the identity and number of general partners of Pikeview.[1]

Beyond the issue of the identity of the general partners of Pikeview, several other objections were raised in opposition to the plan of reorganization. Even though confirmation of the plan of reorganization has been abated, the Court will nonetheless examine these other objections of Pikeview in order to determine whether the plan of reorganization as proposed is potentially confirmable in accordance with Section 1123 and Section 1129 of the Bankruptcy Code.

The essential undisputed facts in this matter are as follows. The debtor commenced this case with the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code on January 13, 1986. The debtor is a Colorado limited partnership pursuant to an amended and restated certificate and an agreement of limited partnership (partnership agreement). The major asset of the partnership is a 224–unit apartment project in Thornton, Colorado, known as Conifer Landing Apartments. The sole general partner of the partnership is Pikeview Venture. Pursuant to a stipulation in February of 1986, a trustee was appointed, and the trustee has continued since that time to manage the affairs of the debtor. The trustee, along with the other creditors, filed an amended plan of reorganization in June of 1987. A second amended plan (the plan) was filed by the trustee along with certain other creditors in August of 1987.

Pikeview contends that the plan, which provides for the replacement of Pikeview as general partner of the debtor with an affiliate of the special limited partner of the debtor, does not comply with Section 1129(a)(3) of the Bankruptcy Code. Pikeview contends that such proposed restructuring of the partnership would violate state law and the partnership agreement. Pikeview also contends that the proposed restructuring forces limited partners into a relationship with the new general partner without their consent, that the restructuring creates an inherent conflict of interest, and finally, that the restructuring violates certain Internal Revenue Code requirements for the receipt of tax benefits for partnerships.

The plan of reorganization as submitted to the Court contains no provision that would require it to comply with the terms of the partnership agreement as that relates to the replacement of a general partner. Pikeview contends that the terms of the partnership agreement should control the replacement of a general partner.[2] More specifically, Pikeview argues that a plan of reorganization, which provides for the replacement of a general partner of the debtor, should be in complete consonance with the terms of the partnership agreement.

The trustee, however, contends that the terms of the partnership agreement do not control in bankruptcy; rather, a plan of reorganization for a limited partnership is governed by Section 1123(a)(5)(I) of the Bankruptcy Code which, according to the trustee, contemplates a completely new construction of the partnership agreement without the constraints of the terms of the old partnership agreement.

The Court begins its analysis of this matter of first impression by examining the relevant language of the Bankruptcy Code. Section 1123(a)(5)(I) of the Bankruptcy Code states:

Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—

. . . .

---

1. Until that determination is made, this Court cannot confirm a plan because the Court cannot make an effective evaluation of whether the plan is in the best interests of the creditors under 1129(a)(7)(A)(ii), which requires a comparison under the Chapter 11 plan of what the various impaired classes or interests would have received under Chapter 7 of the Bankruptcy Code.

2. The Colorado Uniform Limited Partnership Act of 1981, as amended, provides that a general partner may be removed in accordance with the partnership agreement. Section 7–62–402(c), C.R.S.

(5) provide adequate means for the plan's implementation, such as—

. . . .

    (I) amendment of the debtor's charter;

. . . .

The trustee contends this provision demonstrates that partnership law of a state cannot govern the framework of a reorganization plan in bankruptcy, and, *a fortiori*, a partnership agreement can be amended without reference to the partnership agreement or state law. The trustee contends that the only constraints impacting the partnership agreement of a partnership in bankruptcy are those general requirements for confirmation of a plan under Sections 1123, 1126, and 1129 of the Bankruptcy Code. The trustee however, has cited no cases in support of this theory, and this Court is unaware of any decision directly on point.

The Bankruptcy Code does not define the term "debtor's charter" in Section 1123(a)(5)(I). Initially the Court notes that the term "debtor's charter" historically has been a reference to a corporate charter. This Court is unaware of any cases that define the term "debtor's charter" in Section 1123 in the context of partnership reorganization. Indeed, Section 1123(a)(6) of the Bankruptcy Code, the next subsection following the relevant language cited by the trustee, indicates that the "charter of the debtor" is actually a term applicable only to a corporation. An examination of the legislative history of Section 1123 does not provide this Court with any guidance in determining whether the term "debtor's charter" would apply to a partnership agreement.

■ Pikeview's analysis of the Bankruptcy Code as it relates to restructuring partnerships is similarly unpersuasive. Pikeview contends that Section 1129(a)(3) prevents the trustee's plan from being confirmed because the plan would violate the Colorado Uniform Limited Partnership Act of 1981. Section 1129(a)(3) of the Bankruptcy Code states:

The court shall confirm a plan only if all of the following requirements are met:

(3) The plan has been proposed in good faith and not by any means forbidden by law.

Pikeview asserts that the phrase "not by any means forbidden by law" is an indication that state law governs the provisions under which a partnership agreement may be changed under the Bankruptcy Code. However, an examination of the meaning of this Code section indicates that the purpose of 1129(a)(3) was to insure that the *proposal* of a plan of reorganization was to be done in good faith and not in a way that was forbidden by law. Indeed one commentator, in comparing Section 1129(a)(3) with its predecessor sections under the Bankruptcy Act, has indicated that the focus of 1129(a)(3) is upon the conduct manifested in obtaining the confirmation votes of a plan of reorganization and not necessarily on the substantive nature of the plan. *See 5 Collier on Bankruptcy,* ¶ 1129.02 (15th ed. 1984).

Of interest to the Court are two related sections in Section 1123 and Section 1129 of the Bankruptcy Code. Section 1129(a)(5)(A) states:

(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; . . . .

Section 1123(a)(7) provides:

Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—

    ·    ·    ·    ·    ·

(7) contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee.

Under these sections, the Court is charged with weighing the interests of public policy together with the interests of the creditors in evaluating the proposed management of the restructured entity.[3] However, no real guidance is given under these sections in determining the efficacy of restructuring a partnership in bankruptcy in accordance with the partnership agreement. Nonetheless the Court is mindful of sanctity of the special relation created in the debtor's partnership by virtue of the partnership agreement.

This Court is aware of only one case that has tangentially dealt with the issue of reorganizing a partnership under the Bankruptcy Code in contravention of the partnership agreement. In *In re Coastal Equities, Inc.*, 33 B.R. 898 (Bankr.S.D.Cal. 1983), the court indicated that a plan of reorganization, which provided that a majority vote of certain limited partners would bind that particular group of partners with regard to the proposed participation in certain assets for distribution, was nonetheless subject to the voting requirements listed in the partnership agreement in order to take such action. Although the court did not discuss the rationale behind this requirement, it is clear to this Court, after examining the nature of partnerships and their importance under state law, that a partnership relation requires a plan proponent to comply with the terms of a partnership agreement when seeking confirmation of a plan of reorganization wherein that plan proposes to restructure the partnership by replacing or adding additional general partners.

A partnership is a special entity under the law, different from a corporation not only in the extent of liability that may exist under a partnership, but also in the nature of the relationships that exist between the various partners. As noted in this Court's decision in *In re Harms*, 10 B.R. 817, (Bankr.Colo.1981), a partnership agreement creates a fiduciary relationship among the members of the partnership. That agreement is a contract based upon personal trust and confidence. The agreement among partners is unique in law because it is not only a legal relationship that is created, but it reflects a personal relation or status somewhat akin to the relationship of individuals in a marriage.

As a matter of policy, the Bankruptcy Code is not intended to be used as a tool to restructure onerous partnership agreements. This Court is unaware of any provision in the Bankruptcy Code that would supersede Colorado law governing the restructuring of partnership agreements. The Colorado Uniform Limited Partnership Act of 1981 is not in conflict with the Bankruptcy Code when it comes to the replacement of a general partner.[4] Accordingly, this Court will read the language of Section 1123(a)(5)(I) in its most restrictive sense applying it only to corporations and not to partnerships. In the interest of public policy and in order to preserve the special nature and character of partnerships, the Court will uphold the sanctity of partnership agreements in the context of restructuring the management of partnerships through the reorganization process under the Bankruptcy Code.

---

**3.** Section 1123(a)(7) is derived from Section 216(11) of the Bankruptcy Act, and the Senate Report accompanying relating Section 216(11) specifically directed the scrutiny of the court to the methods by which the management of a reorganized debtor is to be chosen.

**4.** The trustee contends that the Colorado Uniform Limited Partnership Act of 1981, which provides that a general partner must be removed in accordance with the partnership agreement, is in direct conflict with Section 1123(a)(5)(I) and thus violative of the Supremacy Clause of the United States Constitution, Article VI. However, the Supremacy Clause is only applicable when there is a conflict between state and federal law. This Court's examination of

the issue of restructuring a partnership agreement does not demonstrate an inherent conflict that would involve the principles of the Supremacy Clause. The Colorado Uniform Limited Partnership Act of 1981 as it relates to the replacement of a general partner does not stand as an obstacle to the accomplishment and execution of the full effectiveness and purpose of the Bankruptcy Code's provisions for the reorganization of a debtor. *See Perez v. Campbell*, 402 U.S. 637, 650, 91 S.Ct. 1704, 1711–12, 29 L.Ed.2d 233 (1971). Congress did not pre-empt the state law of partnerships involving the replacement of a general partner with the provision of Section 1123(A)(5)(I) of the Bankruptcy Code.

Resolution of this legal issue only provides limited guidance in this matter because the parties cannot agree on the interpretation of the partnership agreement as it relates to the replacement of the general partner. Accordingly, this Court will examine the partnership agreement in order to guide the parties as to how to effect a plan of reorganization that will comply with the first part of this opinion.

Section 7.1(b) of the debtor's partnership agreement provides that a majority in interest of the limited partners is required to remove a general partner when certain enumerated events occur. That section provides that:

Subject to the provisions of Section 7.1(a), the general partner may be removed by a majority in interest of the Limited Partners, with the Consent of the Special Limited Partner if (i) the General Partner materially breaches a fiduciary obligation owed to the Partnership; or . . .

(iii) within 15 days of receipt of written notice the General Partner or its Affiliates fails to cure, or to proceed in good faith efforts to cure, any failure to perform fully and faithfully any material obligation owed to the Partnership (including, but not limited to, any obligation, guarantee or commitment to the Partnership pursuant to this Agreement or any other agreement between the General Partner or its Affiliates and the Partnership or the Special Limited Partnership); or

(iv) the Partnership is in default with regard to any loan or financing of the Partnership whether secured by the project or not.

There is no dispute that the preconditions of removal of the general partner have been satisfied because the partnership is in default with regard to a number of financial obligations.

Although the general partner can be removed under Section 7.1, Sections 7.2 and 7.3 of the partnership agreement governs the admission of a successor or additional general partner. Unless a successor general partner can be selected, the removal of the present general partner would effectively dissolve the partnership and destroy any efforts to reorganize the debtor. Section 7.2(a) of the partnership agreement provides that a person shall be admitted as a general partner only if "the admission of such person shall have been Consented to by the Special Limited Partner and all Limited Partners," which apparently would provide any limited partner with a veto power over the selection of a new general partner. Section 7.3, however, provides that by executing the partnership agreement, each limited partner consents to the admission of any person as a successor or additional general partner upon the consent of the special limited partner and a *majority in interest of limited partners*, and that such admission of an additional or successor general partner shall be an act of all the limited partners without further consent or approval.[5]

The plain language of Section 7.3, which modifies Section 7.2(a) of the debtor's partnership agreement, indicates that a new *general partner* can be admitted as a successor to Pikeview Venture upon the consent of the special limited partner and a majority of the limited partners. The trustee has admitted that the limited partners are impaired under the plan of reorganization as presently formulated and, therefore, any plan of reorganization will require the affirmative vote of two-thirds of the limited partnership interests in order to obtain confirmation under Sections 1126 and 1129 of the Bankruptcy Code. Since

5. Section 7.3 reads as follows:
   Consent of Limited Partners to Admission of Successor or Additional Limited Partner
   By executing this Agreement, each of the Limited Partners hereby consents to the admission of any Person as a successor or additional General Partner upon the receipt by the partnership of the Consents of the Special Limited Partner and a majority in Interest of the Limited Partners to such admission, and the admission of such successor or additional General Partner shall then, without any further Consent or approval of the Limited Partners or the Special Limited Partner, be an act of all the Limited Partners.

the partnership agreement requires only the consent of a majority of the limited partners for replacement of the general partner, the two-thirds requirement under Section 1126 of the Code will satisfy this Court's ruling that a partnership plan of reorganization must comply with the terms of the partnership agreement when restructuring the management of the partnership.

■ Pikeview contends that any removal of it as the general partner will effect a dissolution of the partnership under Section 7–62–801, C.R.S., which provides that:

A limited partnership is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following:

. . . .

(c) An event of withdrawal of a general partner unless at the time there is at least one other general partner and the written provisions of the partnership agreement permit the business of the limited partnership to be carried on by the remaining general partner and that partner does so, but the limited partnership is not dissolved and is not required to be wound up by reason of any event of withdrawal if, within ninety days after the withdrawal, all partners agree in writing to continue the business of the limited partnership and to the admission of one or more additional general partners if necessary or desired; and. . . .

Pikeview's reliance on this provision of Colorado law is misplaced. Since Pikeview will be replaced by a substitute general partner at the very moment of confirmation of the plan, Pikeview's contention that the debtor's partnership is dissolved and should be wound up pursuant to this section is without merit because at no time will the partnership be without a general partner at its helm. There will be at least one general partner, the substitute general partner, to carry on the business of the limited partnership under the partnership agreement.

■ This Court's holding with regard to the replacement of the general partner resolves the first two objections expressed by Pikeview because the restructuring as contemplated by this Court provides that the limited partners will not be forced into a relationship with the general partner without their consent. Pikeview's contention that the restructuring would necessarily create an inherent conflict of interest in violation of Section 1129(a)(3) because the proposed replacement partner is an affiliate of the special limited partner is also without merit. As discussed earlier, Section 1129(a)(3) relates to the manner in which a plan is proposed and not its substantive provisions. Should the limited partners decide to replace Pikeview as general partner with some other entity in compliance with the partnership agreement, this Court will look no further in determining whether the replacement partner has any attenuated connection with any of the other partners in the partnership. The partners of the debtor are free to select any entity as a general partner only so long as such selection complies with the terms of the partnership agreement. The Court is unaware of anything in the partnership agreement that would prohibit the selection of a general partner as an affiliate of the special limited partner, and Pikeview has not specifically identified any such provision in the partnership agreement or in the Colorado Uniform Limited Partnership Act of 1981 that would restrain such selection.

Pikeview has called attention to this Court's decision in *In re Harms* in support of its argument that a conflict of interest would necessarily prevent confirmation of a plan of reorganization. However, the facts of *In re Harms* are inapposite to the case at bar. In *In re Harms* the debtor was a general partner in a limited partnership and the Court found that an inherent conflict of interest which resulted from the filing of bankruptcy and which changed the debtor as an entity to a debtor-in-possession would preclude the debtor from remaining as a general partner. In the case at hand, the debtor is a limited partnership, not a general partner, and the nature of the inherent conflict referred to in *In re Harms* does not exist in this circumstance.

Finally, Pikeview contends that the plan does not comply with 11 U.S.C. §§ 1129 and 1123 because it violates the provisions of the Internal Revenue Code for taxation of limited partnerships. Pikeview contends that the substitution of an affiliate of a special limited partner as a general partner in the debtor would jeopardize the debtor's treatment as a partnership under the Internal Revenue Code because certain minimum net worth requirements may not be met by the proposed replacement general partner. This Court is not in a position to speculate as to the decisions yet to be made by the Internal Revenue Service in evaluating the tax benefits provided to this partnership. This Court cannot foresee with complete certitude the actions of the Internal Revenue Service in interpreting various Treasury regulations as they relate to the proposed replacement general partner. Should the limited partners under the plan of reorganization nonetheless choose to replace Pikeview with the proposed affiliate of the special limited partner, they will have done so as a product of their own volition and with full knowledge of the risks that are associated therewith.

Accordingly, once a determination has been made by this Court as to the identity of all the general partners in order to satisfy the best interests of the creditors test under Section 1129(a)(7), the plan of reorganization must be amended to reflect the impairment of limited partners' interests and to insure that the plan of reorganization complies with the terms of the partnership agreement as it relates to the replacement of Pikeview as general partner.

ORDERED that the replacement of the general partner under the proposed plan of reorganization is not prohibited by 11 U.S.C. §§ 1123 or 1129, nor does it violate the Colorado Uniform Partnership Act of 1981 or the terms of the partnership agreement provided that it is amended to reflect the impairment of limited partners' interests and that it complies with the partnership agreement regarding replacement of Pikeview as a general partner.