## In re FOOD CITY, INC. d/b/a Warehouse Grocery, Debtor.

### Bankruptcy No. 88–51685–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 30, 1990.

---

7. Michael Golightly and Joel Klein, jointly and severally.

Randolph N. Osherow, Thomas W. McKenzie, Campmann & Church, San Antonio, Tex., for debtor.

Bruce Waitz, Waitz, Greer, Harrell & Cennamo, San Antonio, Tex., for Official Unsecured Creditors' Committee.

David S. Gragg, Jeffers, Brook, Kreager & Gragg, Inc., San Antonio, Tex., for NCNB Texas Nat. Bank as Successor to First Republicbank—San Antonio, N.A.

Andrew E. Jillson, Jeffrey H. Weir, II, Jenkens & Gilchrist, P.C., Dallas, Tex., for KP/Miller Realty Group Fund I.

## DECISION AND ORDER DENYING MOTION FOR REHEARING AND MOTION TO AMEND

LEIF M. CLARK, Bankruptcy Judge.

On September 13, 1989, this court confirmed the debtor's proposed plan of reorganization, ruling from the bench and making its findings of fact and conclusions of law on the record at that time. KP Miller, whose objections to the plan were overruled by the confirmation, now seeks rehearing of the confirmation or alternatively requests this court to amend certain of its written findings incorporated in the order of confirmation subsequently signed by the court. For the reasons set out in this decision, the court denies KP Miller's motion.

■ The debtor is a discount grocer with stores primarily in the San Antonio area. The company's stock is currently held by an Employee Stock Option Plan (ESOP) and a number of individuals, most of whom are in management positions with the company.[1] The plan proposes to permit current holders of stock other than the ESOP to retain their stock upon a payment of 40 cents per share. KP Miller contended at the confirmation hearing that this provision violated section 1145 and therefore the plan could not be confirmed because it failed to satisfy one of the confirmation standards, section 1129(a)(3), which requires that a plan be proposed in good faith and not by any means prohibited by law.

■ At the confirmation hearing the court did indeed observe that the plan's proposal to condition retention of some shareholders' stock upon a payment of 40 cents per share might well not qualify for the securities laws exemption of section 1145. The court added that no proof had been put on one way or the other whether the proposal would qualify for some other exemption to the federal securities laws or whether it even violated any securities laws in the first place. The court then observed that none of this made any difference be-

---

1. The court takes judicial notice of both the disclosure statement and the debtor's schedules and statement of affairs.

cause section 1129(a)(3) does not, of itself, require that a plan's provisions comply with the Securities Act of 1933, much less that they qualify for the particular exemption made available to reorganizing debtors in section 1145 of the Bankruptcy Code. The court ruled that section 1129(a)(3) applies to the *means employed in proposing* a plan not to the substantive provisions of the plan itself.[2] The court then confirmed the plan.[3]

On this motion for rehearing KP Miller argues that the court ruled in effect that the plan does not comply with all the provisions of title 11.[4] That finding, says KP Miller, requires the court to deny confirmation on grounds that the plan fails to satisfy section 1129(a)(1).[5] Starting from the same premise, KP Miller in addition suggests the court should reconsider its interpretation of section 1129(a)(3). These arguments will be considered seriatim.

Section 1129(a)(1) states that "[t]he court shall confirm a plan only if all of the following requirements are met: (1) The plan complies with the applicable provisions of this title [title 11]." 11 U.S.C. § 1129(a)(1). KP Miller argues that the plan does not comply with an applicable provision of title 11 (i.e., section 1145) absent an affirmative finding that the plan *falls within* the safe harbor of section 1145, and therefore denial of confirmation is compelled.

KP Miller's section 1129(a)(1) argument fails on two grounds. First, the very idea of "compliance" is incompatible with the voluntary nature of section 1145's salutary "safe harbor." Second, section 1145 is not one of the "applicable provisions of this title," as that phrase is used in section 1129(a)(1).

A debtor cannot be "obligated" to comply with section 1145 because the section imposes no obligations in the first place. It merely operates to excuse debtors from the cumbersome registration process that might otherwise be imposed by state and federal securities laws on proposed reorganization plans.

> This section [11 U.S.C. § 1145], derived from similar provisions found in sections 264, 393, and 518 of the Bankruptcy Act, provides a limited exemption from the securities laws for securities issued under a plan of reorganization and for certain other securities.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 419–21 (1977), U.S.Code Cong. & Admin. News 1978, 5787. Section 1145 thus functions primarily as a securities exemption, placed not in title 15 but in title 11. Its primary purpose is salutary not regulatory. If a contemplated stock issuance does not qualify for this securities exemption the scheme may well be *vulnerable* under federal or state securities laws.[6] Nonetheless, since section 1145 is an exemption and not a regulation, it does not *compel* a debtor's

---

2. The court commented in its ruling that confirmation is not intended to operate as a "clean bill of health" with respect to the debtor's liability under any possible state or federal law. Confirmation merely authorizes the proposed financial *restructuring*, leaving the debtor and *its* creditors to suffer whatever consequences that might flow from a breach of any other law. For example, confirmation cannot relieve the debtor of its obligation under the Produce and Agricultural Commodities Act (PACA), the state's worker's compensation laws, or whatever licensing regulations might govern the debtor's business.

3. The court also ruled on three other issues not germane to this motion for rehearing. Those rulings are ratified and affirmed.

4. This is not in fact what the court held from the bench. *KP Miller extrapolates this "finding"* from its review of this court's remarks in the bench ruling. What the court observed in its bench ruling was that the SEC, if asked, would *probably* conclude that the debtor's proposed treatment of the equity interests in this plan does not qualify for the section 1145 exemption. The observation was neither a finding nor a holding. The transcript itself therefore fails to support KP Miller's extrapolation.

5. This issue was not raised at the confirmation hearing, nor was it discussed in the original briefs submitted for that hearing.

6. The court in its bench ruling reserved whether the proposal is *in fact* in violation of the securities laws, because there was insufficient evidence presented to determine with any certainty whether the debtor's plan is even subject to the federal securities laws, or whether the proposal might qualify for an exemption other than section 1145 of the Bankruptcy Code.

plan to fall within its safe harbor provisions. The language of the statute itself clearly makes this point:

> *[S]ection 5 of the Securities Act of 1933* and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security *does not apply to* .... [enumerated situations]

11 U.S.C. § 1145(a) (emphasis added). A debtor may well have reason to structure a plan that. relies on some exemption *other than* section 1145. Lack of "compliance" with an optional exemption is simply an oxymoron.

 It is thus easy to see that section 1145 is also not one of the "applicable provisions of this title" to which section 1129(a)(1) makes reference.[7] Many provisions of title 11, including many sections within chapter 11 itself, are rather obviously not "applicable" to plan confirmation. For example, section 1104 (defining the circumstances under which a trustee should be appointed), section 1105 (describing when that appointment should be terminated), and section 1106 (describing the trustee's duties) do not apply to plan confirmation. By the same token, other sections of title 11 clearly do apply, such as (by way of example only), section 1122 (relating to classification), section 1123 (relating to contents of a plan), section 1124 (relating to impairment), and section 1125 (relating to adequate disclosure).

Whether a debtor chooses to bring its plan's proposed securities issuance within the safe harbor of section 1145 is no more "applicable" to confirmation than whether an individual debtor elects to retain certain property in its plan as exempt under section 522(b). Even though section 1145 is *related* to the confirmation process it contributes nothing by itself to the confirmation process.[8] Concluding that the section is not one of the "applicable provisions of this title," this court holds that the question whether this plan's stock issuance provision qualifies for its salutary exemption is not a fact issue germane to section 1129(a)(1). Rehearing on this ground is therefore neither necessary nor appropriate.

The court also rejects KP Miller's invitation to reverse field on its interpretation of section 1129(a)(3). That section reads as follows: "The court shall confirm a plan only if all of the following requirements are met: (3) The plan has been *proposed* in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3) (emphasis added). Thus, it is the plan's *proposal* which must be (a) in good faith and (b) not by a means forbidden by law.

> [T]he purpose of 1129(a)(3) was to insure that the *proposal* of a plan of reorganization was to be done in good faith and not in a way that was forbidden by law. Indeed one commentator, in comparing Section 1129(a)(3) with its predecessor sections under the Bankruptcy Act, has indicated that the focus of 1129(a)(3) is upon the conduct manifested in obtaining

---

**7.** The notion that section 1129(a)(1) requires a plan to "comply" with *all* provisions of title 11 as a predicate to confirmation can be disposed of quickly. Had that been Congress' intent the statute would certainly not have added the adjective "applicable" which clearly implies that some provisions of title 11 are *not* applicable to the issue at hand in section 1129, i.e. confirmation. In construing a statute, a court is obligated to give effect to every word of the statute, if possible. *South Carolina v. Catawba Indian Tribe,* 476 U.S. 498, 510 n. 22, 106 S.Ct. 2039, 2046 n. 22, 90 L.Ed.2d 490 (1986); *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979); *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955). A court is also obligated to avoid an interpretation which would render a given term in a statute meaningless or superflu-

ous. *Fulps v. City of Springfield,* 715 F.2d 1088, 1093 (6th Cir.1983); *Born v. Allen,* 291 F.2d 345 (D.C.Cir.1960).

**8.** This is certainly not to say that a given method of stock issuance proposed in a plan might not be germane to confirmation for some other reason. *See* discussion of section 1129(a)(3) *infra* and note 12 *infra.* The mere fact that such a plan provision does not qualify for exemption under section 1145 is not, of itself, fatal to a plan in the way that failure to properly classify creditors would be. *See* discussion *supra.* The plan provision might, for example, qualify for some other exemption from registration, or may be so incidental to the plan that its effect on confirmation is *de minimis.*

the confirmation votes of a plan of reorganization and not necessarily on the substantive nature of the plan.

*In re Sovereign Group, 1984–21 Ltd.*, 88 B.R. 325, 328 (Bankr.D.Colo.1988) (citing 5 *Collier on Bankruptcy* ¶ 1129.02 (15th ed. 1984)). *See Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir.1984) (use of trade secrets or confidential information acquired during employment in violation of New York state law to propose plan would be prohibited); *In re Talladega Steaks, Inc.*, 50 B.R. 42, 44 (Bankr.N.D.Ala.1985) (improper motive in proposing plan grounds for denial of confirmation).

■ The question here is whether, assuming *arguendo* that the plan provision violates state or federal securities laws, the plan's proposal contravenes section 1129(a)(3). KP Miller's proposed construction of section 1129(a)(3) effectively equates confirmation with a "clean bill of health" with regard to all laws with which a given plan might conceivably conflict. Under this view, if any part of the plan violates any law then confirmation must be denied. Accordingly, KP Miller insists that this plan cannot be confirmed. The argument suffers from a number of flaws.[9]

■ First of all, KP Miller's argument reads too much into the discharge associated with confirmation. That discharge does not insulate a debtor from all liability. If the discharge indeed had a preclusive effect on subsequent enforcement actions it might be appropriate to read section 1129(a)(3) to require courts to examine the substantive provisions of all plans for illegalities, for then this court would be the court of last resort, the last opportunity to remedy the wrong. If discharge does not have such an effect, however, KP Miller's

interpretation of section 1129(a)(3) would convert the bankruptcy judge into an ombudsman without portfolio, gratuitously seeking out possible "illegalities" in every plan. Such a role is both inimical to the basic function of bankruptcy judges in bankruptcy proceedings and a thoroughly unnecessary gloss on the statute. *See* 11 U.S.C. §§ 102(1), 1129(a)(3); *see also* H.R. Rep. No. 595, 95th Cong., 1st Sess. 316 (1977), U.S.Code Cong. & Admin.News 1978, 6273.[10] Unless discharge itself bars further enforcement actions and purports to confer a "clean bill of health" on the debtor, then one of the justifications for KP Miller's reading of section 1129(a)(3) disappears.

Section 1141, the provision which governs the effect of a chapter 11 confirmation and its discharge, provides, in pertinent part, that

(a) ... [T]he provisions of a confirmed plan bind the *debtor*, any *entity issuing securities under the plan*, any *entity acquiring property under the plan*, and any *creditor, equity security holder, or general partner* in the debtor....

(b) ... [T]he confirmation of a plan vests all of the property of the estate in the debtor.

(c) ... [A]fter confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

(d)(1) ... [T]he confirmation of a plan—
 (A) discharges the debtor from any debt that arose *before* the date of such confirmation ...
 (B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

---

9. One of the factual premises on which this argument is founded is also flawed. As discussed above, this court has *not* found that the plan provision in question in fact violates any laws. However, as this is a motion for rehearing, a finding that KP Miller's legal position is valid would warrant granting rehearing to determine this factual matter.

10. This is not to say that a potentially illegal provision is not a relevant consideration in the confirmation process. For example, the legal consequences which might flow from the imple-

mentation of a substantive provision which is prohibited by law could affect the plan's feasibility under section 1129(a)(11). The court has already considered (and rejected) that possibility in this case. Further, as discussed later in this opinion, some illegalities might indeed undermine the *bona fides* of the plan's proposal, or be part of an illegal means of proposal. The question considered here is whether *any* illegality, whether or not related to the plan's proposal, is fatal to confirmation as a matter of law.

11 U.S.C. § 1141 (emphasis added). A facial reading of the statute confirms that the discharge conferred does not insulate debtors from post-confirmation enforcement actions, even if the violation in question arises from the plan itself. An illustration demonstrates why this is so.

Suppose that a given plan contains a provision the implementation of which would violate the federal securities laws (as has been alleged here). What impact would confirmation of such a plan have on the ability of the Securities and Exchange Commission to enforce those laws? First, any violation of the securities laws occasioned by the terms of a confirmed plan would not be a "claim" or a "debt" against the estate within the meaning of the statute. 11 U.S.C. §§ 101(4), 101(11), 1141(d)(1)(A). Second, even if a securities violation arising out of the provisions of a confirmed plan were found to be a "claim" or a "debt," the violation would not predate confirmation, and so would not be discharged. 11 U.S.C. § 1141(d)(1)(A). Third, the SEC does not qualify as a "creditor" of the estate bound by the confirmed plan. 11 U.S.C. §§ 101(9), 1141(a). The SEC would thus not be barred from enforcing the securities laws with respect to the violation arising out of the plan notwithstanding its confirmation by court order. The same analysis preserves the right of virtually all regulatory authorities to do their job without fear that they will be barred by the chapter 11 discharge.

Sound policy reasons buttress this conclusion. Were it otherwise, the failure of regulatory authorities to raise a violation of the laws they are charged with enforcing at the confirmation hearing could well bar their assertion at a later date in another forum under principles of *res judicata*. *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987). Such a rule

would place an onerous and unnecessary burden on the debtor, on those charged with enforcing laws and on the court. All regulatory agencies (and there are thousands) would have to participate in all chapter 11 cases, introducing extraordinary delay into the system and imposing an impossible burden on the agencies. Moreover, a rule which requires a debtor to affirmatively represent in its plan and disclosure statement that the plan does not violate *any* law imposes an unrealistic due diligence burden upon both the debtor and debtor's counsel.[11] The extraordinary legal costs of sustaining such a burden would inevitably be borne by the estate's unsecured creditors. Such a rule defies both law and logic.

Because the SEC and other regulatory entities are not barred from enforcing violations of laws occasioned by provisions of a confirmed plan, the justification for KP Miller's proposed interpretation of section 1129(a)(3) (i.e., the danger that confirmation of a plan would operate as a clean bill of health barring subsequent enforcement of those laws against the reorganized debtor) evaporates. The statute on its face certainly does not compel the court to pursue a *sua sponte* "inquisition," and this court is disinclined to read in such a requirement. Furthermore, a rule which requires a court to seek out possible future violations from which confirmation will not shelter the debtor anyway invites advisory rulings and wastes valuable judicial resources.[12] So long as the *proposal* of the plan is not "by a means forbidden by law," the plan should pass muster under that portion of section 1129(a)(3). *In re Sovereign Group*, 88 B.R. at 328.

■ KP Miller suggests that a plan cannot under any circumstances be found to have been proposed in good faith (the other portion of section 1129(a)(3)) if the plan contains a provision which would run afoul

---

**11.** Imagine the burden this would have placed on Texaco were such a condition to have been imposed on debtor's counsel prior to confirmation.

**12.** A plan which contains a blatantly illegal provision will probably founder on any one of a number of other provisions. For example, the plan is less likely to be found to have been

proposed in good faith. An obvious illegality also exposes the plan on feasibility grounds. Finally, such a plan might fail under the "fair and equitable" standard if the plan goes to cram-down under section 1129(b). *See FSLIC v. D & F Constr., Inc. (In re D & F Constr., Inc.),* 865 F.2d 673 (5th Cir.1989).

of some other law, such as the securities laws. Cases which have interpreted the "good faith" language of this subsection, however, do not support KP Miller's position. They couch the appropriate inquiry in terms of whether the plan represents a legitimate pursuit of reorganization and not an attempt to abuse the confirmation process to achieve some improper purpose. *E.g., B.M. Brite v. Sun Country Dev. Inc. (In re Sun Country Dev. Inc.),* 764 F.2d 406, 408 (5th Cir.1985); *In re AOV Indus.,* 31 B.R. 1005, 1011–12 (D.D.C.1983); *Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.),* 84 B.R. 167, 172 (9th Cir.BAP 1988) (good faith standard satisfied if plan will achieve result consistent with objectives and purposes of Code and deals with creditors with fundamental fairness); *In re Nikron, Inc.,* 27 B.R. 773, 778 (Bankr.E.D. Mich.1983). ("A plan is proposed in good faith 'when there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.' ") (quoting *In re Nite Lite Inns,* 17 B.R. 367, 370 (Bankr.S.D.Cal. 1982)). This court has previously found that this plan was indeed proposed with the legitimate purpose of reorganizing this debtor's financial affairs. That one of the provisions of this plan potentially might run afoul of state or federal securities laws does not in and of itself compel a finding that the plan has not been proposed in accordance with the requirements of section 1129(a)(3).[13] Of course, if an illegal plan provision is found to be the real reason behind the plan's proposal or the illegality is sufficiently blatant a court might well find the illegality infects the very *bona fides* of the proposal. Given the facts and posture of this case such a finding is not warranted here.[14]

This court, then, reiterates its holding that a plan's inability to qualify for the section 1145 exemption from securities laws does not render the plan out of compliance within the meaning of section 1129(a)(1) of the Bankruptcy Code because section 1145 is not one of the "applicable provisions" to which section 1129(a)(1) makes reference. Nor does mere failure to qualify for the section 1145 exemption mean that the plan has been proposed by a means "forbidden by law" within the meaning of section 1129(a)(3) of the Code. Finally, the mere presence of the stock issuance provision in this plan does· not infect the *bona fides* of the debtor's proposal to reorganize. The mechanism is clearly not incorporated for purposes of evading any laws or to abuse the reorganization process. A further examination of the mechanism is not warranted.[15] It is therefore not necessary to determine whether, as a matter of fact, this plan's provision for issuance of stock to existing equity holders does or does not qualify for the section 1145 exemption (or any other securities laws exemption for that matter). For these reasons, KP Miller's motion to recon-

---

**13.** Of course, a plan *proposed* by means which violate the securities laws would violate section 1129(a)(3). *See In re Temple Retirement Community, Inc.,* 80 B.R. 367 (Bankr.W.D.Tex.1988); *see also In re Century Glove, Inc.,* 860 F.2d 94 (3d Cir.1988). So would a plan whose principal goal (or the motivation for which) is to *evade* the securities laws. Interestingly enough, a plan mechanism which qualifies for the section 1145 securities exemption is *more* likely to raise concerns about the good faith of the plan itself under section 1129(a)(3) than one that does not, precisely because such a plan could constitute an improper use of the Code to evade compliance with the securities laws.

**14.** Recall that no parties put on any probative evidence that the plan provision here in question in fact violates any securities laws, nor have they attempted to establish that no other exemptions are available to the debtor to shelter the proposed stock issuance. Recall as well that virtually all the holders of stock affected by the plan are intimates of the debtor, not the "innocent investors" whom the securities laws are designed to protect. These facts do not trigger the sorts of concerns that the "good faith" provision is designed to address.

**15.** It would, to the contrary, reward only KP Miller by further delaying the confirmation of this plan. The entire section 1145 issue is, at bottom, nothing more than a technicality with which KP Miller hopes to strangle this plan. KP Miller is not at all affected by the stock issuance provision. KP Miller vehemently opposes the treatment of its claim in this plan, of course, but none of the provisions of that treatment are the subject of this motion for rehearing.

sider is denied.[16]

So ORDERED.

---

**16.** So also is KP Miller's request for further findings. This court made its findings of fact and conclusions of law on the record on September 13, 1989. Those findings and conclusions have been supplemented by this decision which constitutes additional findings and conclusions. This decision does not supplant those findings. Rule 52 does not require this court to reduce its findings to writing. To the extent there are findings contained within the order of confirmation they too supplement rather than supplant those rulings made from the bench. Any inconsistencies should be resolved in favor of the bench ruling.