**In re GENERAL DEVELOPMENT CORPORATION, et al.,
Debtors.**

**Bankruptcy No. 90–12231–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 18, 1991.

See also 124 B.R. 376, 135 B.R. 1008, 135 B.R. 1015, 135 B.R. 1020.

Mark D. Bloom, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Miami, Fla., for Gen. Development Corp., et al.

## MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS TO CONFIRMATION FILED BY CERTAIN MUNICIPAL CLAIMANTS

A. JAY CRISTOL, Bankruptcy Judge.

This cause came before the Court for hearing on Friday, December 13, 1991, at 10:00 p.m., upon Objections to Confirmation of the Second Amended Joint Plan of Reorganization of GENERAL DEVELOPMENT CORPORATION filed by the City of North Port, Sarasota County and Charlotte County (collectively, the "Objecting Municipalities"). The Court having read and considered the Objections, the Memorandum in Support of Confirmation of the Second Amended Joint Plan of Reorganization of General Development Corporation, the City of North Port's Memorandum in Opposition to Confirmation of Second Amended Joint Plan of Reorganization of General Development Corporation, the authorities cited by the parties and other matters of record, heard the argument of counsel and otherwise been duly advised in the premises, issues this Memorandum Decision and Order overruling the Objections.

### DISCUSSION

Prior to the filing of its Chapter 11 petition on April 6, 1990, GENERAL DEVELOPMENT CORPORATION ("GDC") or (the "Debtor") was principally involved in the sale and development of real estate throughout the State of Florida and in Tennessee. In connection with its development of residential communities across the State, GDC incurred a number of obligations to local municipalities, largely relating to the construction and maintenance of roads, drainage and other infrastructure necessary to support these communities.

At the time of the Chapter 11 filing many of these obligations remained unfulfilled. Budgetary constraints and the diversion of management attention to the task of reorganization required that most development activity be interrupted, leaving incomplete or unstarted various projects for which development approvals had been obtained and obligations incurred. As a result, a number of municipalities have timely filed claims aggregating in the hundreds of millions of dollars.

Along with the Official Creditors Committee, the Debtor has jointly filed a Second Amended Joint Plan of Reorganization (the "Plan"). By Order dated October 9, 1991 the Court approved the related Disclosure Statement as containing adequate information, scheduled hearings on confirmation of the Plan for December 5, 12 and 13, and set November 25, 1991 as the deadline for filing Objections to confirmation. The Plan provides, in pertinent part, that general unsecured creditors including the municipal claimants treated in Class 11 will receive a combination of common stock and notes from the Reorganized Company.

Each of the Objecting Municipalities has timely filed an Objection to confirmation of the Plan on the basis that it is not proposed "in good faith and not by any means forbidden by law," as required by Section 1129(a)(3) of the Bankruptcy Code, 11 U.S.C. § 1129(a)(3). The Objecting Municipalities argue that the Plan contravenes Section 1129(a)(3) because the proposed distribution of common stock to creditors in Class 11 violates Article VII, Section 10 of the Florida Constitution, Fla. Const., Art. VII, § 10.[1]

In addressing these Objections, it is important first to observe that Class 11 has voted in the requisite number and amount to accept the Plan pursuant to Section

---

1. Charlotte County also objects to the distribution of unsecured notes to the municipalities in Class 11. The Court overrules this Objection as finding no basis in the language of the constitutional provision cited.

1126(a) of the Code. Accordingly, the Objections do not require the Court to invoke the cramdown provisions of Section 1129(b) with respect to Class 11.

The treatment of all Class 11 claims, other than claims of the Florida Division of Land Sales, Condominiums and Mobile Homes (the "Division"), is addressed in Section 5.8(b) of the Plan. In lieu of the distributions of notes and stock offered to other classes of general unsecured creditors, Section 5.8(b) provides that GDC "may provide alternative distributions of other property of the Company," which property shall be so distributed free and clear of any liens securing indebtedness to be issued pursuant to the Plan. The intent of this provision is to enable the Debtor to offer municipal creditors the option to receive land in respect of their claims, upon settlements of those claims approved by the Court pursuant to Fed.R.Bankr.P. 9019(a). The land can then be sold by the municipalities to generate cash or, if appropriate, used for public purposes.

Simply stated, the issue before the Court is whether the proposed distribution in stock to municipal creditors is in violation of Article VII, § 10 of the Florida Constitution, such that the Plan cannot be confirmed for failure to meet the requirements of Section 1129(a)(3) of the Bankruptcy Code. Each of these provisions is set forth below.

Section 1129(a)(3) of the Bankruptcy Code provides:

(a) The court shall confirm a plan only if all of the following requirements are met:

.   .   .   .   .

(3) The plan has been proposed in good faith and not by any means forbidden by law.

11 U.S.C. § 1129(a)(3). Article VII, Section 10 of the Florida Constitution provides, in pertinent part:

Neither the state, nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person....

Fla. Const. Art. VII, § 10. The impact of each of these provisions will be considered separately.

I. *Fla. Const. Art. VII, § 10*

The initial issue is whether the distribution of common stock to the Objecting Municipalities and other Class 11 creditors violates this provisions of the Florida Constitution. One reasonable construction of Article VII, Section 10 is that it merely prohibits a municipality or other governmental entity from holding stock "to aid any corporation," and is not an outright prohibition against the ownership of stock. If the Plan is confirmed, Class 11 creditors who fail to reach agreement with the Debtor on an alternative distribution of real property will acquire stock in the Reorganized Company in their own right, and not for the aid or benefit of that Company. Under this construction of Article VII, Section 10, the Plan does not violate that provision.

■ The purpose of the constitutional prohibition against a municipality owning corporate stock is to protect public funds and resources from exploitation by private for-profit ventures with only incidental benefits to the public. *State v. City of Panama City Beach*, 529 So.2d 250 (Fla.1988); *Bannon v. Port of Palm Beach District*, 246 So.2d 737, 741 (Fla.1971); *Bailey v. City of Tampa*, 92 Fla. 1030, 111 So. 119 (1926). Thus, Article VII, Section 10 acts as a check against voluntary acts by public officials to invest public funds or commit the credit of a municipality for private benefit at the public expense. If there is no voluntary act by public officials to invest public funds for private benefit, then there is no constitutional violation. *See, City of West Palm Beach v. Williams*, 291 So.2d 572 (Fla.1974) (where bonds were not to be issued, *public funds not to be spent,* and power of eminent domain not to be exercised, lease of city property for private use did not violate Article VII, § 10), reversing *Williams v. Turrentine*, 266 So.2d 81 (Fla. 4th DCA 1972).

■ In the instant case, there is no voluntary investment of public funds and resources in aid of a private enterprise. Instead, the Objecting Municipalities are holders of general unsecured claims. Pursuant to a Chapter 11 plan of reorganization proposed for confirmation under federal law, holders of such claims may receive a distribution of stock in the same manner as other similarly situated creditors. Because the purpose of the constitutional provision is not violated, the Court refuses to hold that Article VII, Section 10 of the Florida Constitution prohibits the Objecting Municipalities from receiving stock under the Plan such that confirmation must be denied under 11 U.S.C. § 1129(a)(3).

■ This conclusion is supported not only by the availability of an alternative distribution to Class 11 creditors under the Plan, but also by the numerous other options available to such creditors who desire to avoid becoming stockholders in the Reorganized Company. One such option is to simply to arrange to sell the stock when issued.[2] The City of North Port contends that if required to dispose of the stock immediately upon issuance it will receive little or no consideration in respect of its claim, and that the Plan accordingly fails to comply with Section 1129(a)(7)(A)(ii) of the Code in that the City would receive a greater return upon liquidation of the Debtor under Chapter 7. In light of the notes to be received by Class 11 creditors in addition to the stock, the liquidation analysis offered in the Disclosure Statement and the uncontroverted testimony of Peter A. Martosella at the confirmation hearing on December 12, 1991, the Court rejects this argument as well.[3]

Another possibility is the creation of a blind trust to hold the stock for the benefit of municipalities. The Court views the creation of such a blind trust to be a reasonable and appropriate means of implementing the Plan with respect to Class 11 creditors with whom the Debtor cannot reach agreement on an alternative distribution. The Debtor is encouraged to establish such a trust as a means of implementing the Plan pursuant to Section 1142(b) of the Code, 11 U.S.C. § 1142(b), with the cost of administration to be borne by the municipalities electing to participate as beneficiaries of that trust.

The Court views each of these alternatives as responsive to the concerns of the Objecting Municipalities. Moreover, the creation of a blind trust or the sale of any stock when issued would also satisfy Charlotte County's concern that to hold stock in GDC would create a conflict of interest for a municipality called upon to make decisions regarding changes in the zoning and use of land owned by GDC.

The Court is not persuaded that such a conflict is unavoidable. GDC is a substantial taxpayer in many of the counties where it conducts business.[4] Taken to a logical extreme, one could suggest that this circumstance creates an even more direct conflict of interest, in that governmental decisions on zoning and land use applications determine and define the use and value of GDC's property and directly affect the tax revenue derived from that property. This and other inherent conflicts routinely exist in the relationship between private businesses and the public bodies which regulate their affairs, irrespective of bankruptcy or other federal law.

**2.** Although it is not the function of the Court to encourage trading in claims, it should be noted the municipal creditors have been and remain free to transfer their claims at any time prior to the Effective Date of the Plan. Fed.R.Bankr.P. 3001(e). *See* Fortgang & Mayer, *Trading Claims and Taking Control of Corporations in Chapter 11*, 12 Cardozo L.Rev. 1 (1990).

**3.** Mr. Martosella also testified, and the Disclosure Statement provides, that GDC will attempt to list the stock on the NASDAQ National Mar-

ket System. Although no such listing can be assured, the Debtor's efforts to meet the requirements to obtain a NASDAQ listing further undermine the City of North Port's suggestion that the stock to be issued pursuant to the Plan will have no value and no market.

**4.** As an example, the St. Lucie County Tax Collector testified at the confirmation hearing that GDC is the second largest taxpayer of ad valorem real property taxes in that county.

## II. *Section 1129(a)(3)*

■ The ultimate question posed by the Objecting Municipalities is whether the Plan meets the confirmation requirements of Section 1129(a)(3). Even assuming that the distribution of stock to the Objecting Municipalities may be construed to violate the Florida Constitution (and the Court does not accept such a construction), the Plan has nevertheless been proposed in good faith and not by any means forbidden by law and thus meets the requirements for confirmation of Section 1129(a)(3).

■ Courts addressing the issue have uniformly held that Section 1129(a)(3) does not require that the contents of a plan "comply in all respects with the provisions of all nonbankruptcy laws and regulations." *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 59 (Bankr.S.D.N.Y.1990); *In re Food City, Inc.*, 110 B.R. 808, 812–13 (Bankr.W.D.Tex.1990). Instead, Section 1129(a)(3) requires only that the *plan's proposal*, as opposed to the contents of the plan, be in good faith and in compliance with all nonbankruptcy laws. *Buttonwood Partners*, 111 B.R. at 59–60 (citing 5 Collier on Bankruptcy, ¶ 1129.02, 129–33 (15th ed. 1989)); *In re Food City, Inc.*, 110 B.R. at 811.[5]

In the instant case, the Debtor's good faith in proposing the Plan, and specifically in the proposed treatment of Class 11, is evident. First, Section 5.8(b) of the Plan expressly allows for alternative distributions of other property to Class 11 creditors, other than the Division, in lieu of the distribution of notes and stock. The Debtor's good faith in proposing this alternative distribution is reflected by the Court's approval of two prior land-for-debt settlements involving claims totalling in excess of $180 million, and pending motions to approve additional settlements of similar nature.

■ Further, if the Debtor and a municipality are unable to agree on an alternative distribution, the municipality can simply arrange to sell the stock when issued, precisely as it could have transferred its claim at any stage of these proceedings, or direct that its stock be distributed to a blind trust as offered, by the Debtor.[6] With all of these options available, the Court believes that any harm to the Objecting Municipalities as Class 11 creditors is self-inflicted, and not a valid objection to confirmation under Section 1129(a)(3) or on any other basis. Indeed, their apparent disdain for each of the available options suggests to the Court that it is not really a constitutional violation to which they object, but rather their treatment proposed under the Plan. *See Buttonwood Partners, Ltd.* 111 B.R. at 59 (properly characterizing objection to confirmation under Section 1129(a)(3) as objection to treatment under a plan, and confirming plan under cramdown provisions of Section 1129(b)).

As indicated, the Debtor neither seeks nor requires a cramdown of Class 11 under the Plan. To the contrary, Class 11 has accepted the Plan, and the Court is not prepared to deny confirmation simply because three members of this accepting class who voted to reject the Plan have chosen to explain their reasons for rejection in the form of Objections to confirmation. Accordingly, it is

---

5. These cases are consistent with the Supremacy Clause of the United States Constitution, and the federal law embodied in Chapter 11 of the Bankruptcy Code which has the paramount policy of debtor rehabilitation. See *In re Buttonwood*, 111 B.R. at 61 (citing *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 515, 104 S.Ct. 1188, 1190, 79 L.Ed.2d 482 (1984)). In the instant case, the Court refuses to contravene this policy due to a Florida constitutional provision which does not clearly preclude a debtor from distributing stock to a municipality under a plan of reorganization, particularly where the plan provides for alternative distributions of other property in lieu of the common stock.

6. The Court rejects the suggestion by the City of North Port that the Objecting Municipalities receive additional notes in place of stock under the Plan. No such modification has been suggested by a proponent of the Plan, as required by Section 1127 of the Code, and promoting Class 11 to receive debt in the Reorganized Company while other similarly situated creditors receive a combination of debt and equity would violate the requirement of equality of distribution under the Code.

ORDERED AND ADJUDGED that the Objections to confirmation of the Plan filed by the City of North Port, Charlotte County and Sarasota County be and hereby are OVERRULED. The Court will enter separate findings and conclusions with respect to confirmation of the Plan at the appropriate juncture.

DONE AND ORDERED.