**In re NORWESCO DEVELOPMENT CORPORATION, Debtor.**

**NORWESCO DEVELOPMENT CORPORATION, Plaintiff,**

**v.**

**COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL RESOURCES, Defendant.**

Bankruptcy No. 85–0046E.
Adv. No. 86–0004.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 17, 1986.

Kenneth D. Chestek, Murphy, Taylor and Adams, P.C., Erie, Pa., David L. Hotchkiss, Colbertson, Weiss, Schetroma and Schug, Meadville, Pa., for debtor.

James D. Morris, Philadelphia, Pa., Zelda Curtis, Commonwealth of Pennsylvania, Dept. of Environmental Resources, Pittsburgh, Pa., for DER.

### MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

Before the Court is Norwesco Development Corporation's Application for Rule to Show Cause Why Pennsylvania's Department of Environmental Resources ("DER") Should Not Be Held to Be In Contempt of Court and for a Stay of an Order of the Commonwealth Court of Pennsylvania. As indicated in the Pretrial Order, contempt is not appropriate. The Court now considers the application for a stay. The Debtor, Norwesco Development Corporation ("Norwesco"), is operating pursuant to a confirmed Chapter 11 plan. The Commonwealth Court of Pennsylvania has ordered Norwesco to comply with a DER Order.

The Order requires Norwesco to provide a temporary and a permanent water supply to the damaged homeowners. Norwesco must first submit a plan to the DER for the permanent water supply.

Norwesco contends that the DER's Order really constitutes a claim treated by the Debtor's confirmed plan. The Debtor further argues that the costs required to implement the DER Order would be so high that it would force Norwesco into liquidation.

The DER defends and argues that the Bankruptcy Court lacks jurisdiction in this matter. The DER believes it is enforcing the Commonwealth's environmental protection statutes which are enacted under the police power of the Commonwealth. The DER believes these police power statutes exempt the DER from any Bankruptcy Court review of its orders. Furthermore, the DER argues that its police action is not a monetary claim against the Debtor within the meaning of the Bankruptcy Code.

## HISTORY OF THE FACTS

In 1983 and 1984, the DER issued well drilling permits to Norwesco to drill for oil in Sandy Creek Township, Venango County. Some of the permits were within the groundwater recharge area for Belmar Village, which is composed of approximately 18 houses. The water supply for the Belmar village residents derives from private water wells. In the oil drilling process, brine is produced as a waste fluid with the crude oil. In 1985 and 1986, 13 homeowners in Belmar Village filed complaints with the DER reporting that their well water was polluted. Because of this pollution, these residents cannot use their well water for cooking, drinking, cleaning or bathing. Norwesco is the only oil and gas operator drilling and producing oil in Belmar Village area. There have been other producers in the past.

The DER has administratively determined that Norwesco's brine disposal activities had polluted the groundwater and water wells of the Belmar residents. On January 3, 1986, the DER issued an administrative Order that: 1. Norwesco provide temporary water supply to Belmar residents. 2. Norwesco submit a plan to the DER for its review and approval, setting forth a permanent water supply replacement. This plan must include a description of the water source, necessary water treatment and water conveyance facilities, with construction details for each. 3. Norwesco implement the plan approved by the DER. 4. During the implementation of the Order, Norwesco must not create any new environmental problems. The DER Order was amended on February 20, 1984 and July 8, 1986 to add four new residents who filed complaints with the DER.

The DER has not ordered Norwesco to purify the polluted groundwater or to in some manner eliminate the brine. Norwesco believes that over a period of time if no further pollution occurs, the brine would be flushed out by natural processes. It is disputed how long this would take. There may not be a practical method for cleaning the water supply except by allowing the natural processes to occur. The DER believes that providing an alternate water supply is less expensive.

Norwesco appealed the DER Order to the DER's Environmental Hearing Board ("EHB"), which is pending. A Petition for Supersedeas was denied. Norwesco is not now providing water to the Belmar residents and has not submitted a plan to the DER.

On November 19, 1985, Norwesco filed for reorganization under Chapter 11. Prior to the confirmation of a plan, on April 17, 1986 Judge Bentz of the Bankruptcy Court ordered a stay of the DER Order under 11 U.S.C. § 362. The DER appealed and the District Court vacated the Bankruptcy Court Order on June 16, 1986.

On July 16, 1986, the plan was confirmed. The confirmed Chapter 11 plan treats the DER and 15 homeowners as unsecured creditors. If final liability is proven, their claims were to be paid by Norwesco's liability insurer.

On March 12, 1986, the Bankruptcy Court granted relief from the automatic

stay to certain residents of Belmar Village who desired to file a Complaint for damages against Norwesco in the Court of Common Pleas of Venango County. Fourteen Belmar homeowners then filed a Complaint for damages. Ten of these also filed a complaint with the DER. Three homeowners, not plaintiffs in the Venango County action, filed complaints with the DER. Even so, the insurer has notified Norwesco that it has reserved the right to deny Norwesco indemnification under the policy.

The DER requested compliance with its Order in the Commonwealth Court of Pennsylvania. On August 13, 1986, the Commonwealth Court granted the DER's motion for a preliminary injunction and ordered Norwesco to comply with the DER's administrative Order during the pendency of the appeal before the EHB. Norwesco has appealed the Commonwealth Court Order to the Pennsylvania Supreme Court. Norwesco has also filed the instant Application for a Stay of the Commonwealth Court Order in this Court.

At the trial on Norwesco's Application for Stay, the Debtor introduced a two-page letter from Moody and Associates, Inc., an engineering and consulting firm. Moody estimates that the cost of a permanent water system will be $133,000, exclusive of the cost of the site acquisition, modifications to individual home plumbing, relandscaping, etc. The Debtor alleges that it does not have the assets necessary to provide a permanent water system. If the insurance company does not indemnify it for the costs of a permanent water system, the Debtor may be forced to liquidate. The Court has not reviewed the defenses available to the insurance company. The defenses may be different with regard to the individual Belmar claimants than the DER.

Although the DER did not contest this estimate, the DER reminds the Court that Norwesco has not filed the required plan with the DER, and the DER desires to evaluate the plan and costs when it is submitted as a plan.

## ANALYSIS

### A. Jurisdiction

The DER asserts that the Bankruptcy Court lacks jurisdiction under the Eleventh Amendment to the United States Constitution. It also claims that the Commonwealth is immune from suit in the federal courts in the absence of a waiver of that immunity. This Court holds that if Norwesco's obligation to build a permanent water system is a "debt" within the meaning of the Bankruptcy Code ("Code"), then the Bankruptcy Court clearly would have jurisdiction. 11 U.S.C. § 106(c) provides:

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity" or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

In *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) (see *infra*), the Supreme Court held that a state court injunction to clean up hazardous wastes is a dischargeable debt when the order is converted into an obligation to pay money. *Id.* 105 S.Ct. at 709, 711. Confirmation of the Chapter 11 plan would discharge the debtor from any debt that arose before the date of such confirmation whether or not a proof of claim is filed or deemed filed under Section 501 of the Code. 11 U.S.C. § 1141(d)(1)(A). Section 106(c) provides that any provision of the Bankruptcy Code that contains the words "creditor" applies to governmental units. "Governmental units" are defined in Section 101(24) as any state or instrumentality of any state. The sovereign immunity of the Commonwealth of Pennsylvania is waived as to any DER claim against the debtor that is dischargeable upon confirmation of the debtor's plan. The claim is deemed filed in a Chapter 11 when the debtor lists the creditor on its schedules and the Chapter 11 plan provides for the debt.

■ The Bankruptcy Court has the jurisdiction to bind the DER on bankruptcy issues involving the dischargeability of debts under a confirmed plan. 11 U.S.C. § 1141(d)(1)(A). The legislative history to Section 106(c) states in part:

> Section 106(c) codifies *In re Gwilliam*, 519 F.2d 407 (9th Cir.1975) and *In re Dolard*, 519 F.2d 282 (9th Cir.1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during a bankruptcy case whether or not the governmental unit to which such taxes are owed files a proof of claim. Except as provided in section 106(a) and (b), subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well. For example, section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit....

124 Cong.Rec. H 11,091 (Sept. 28, 1978); S 17,407 (Oct. 16, 1978).

In *Penn Terra, Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267 (3d Cir. 1984) (see *infra*), the Court of Appeals noted that: "The bankruptcy court, in its discretion, may issue an appropriate injunction under 11 U.S.C. § 105, even if the automatic stay is not operative. 11 U.S.C. § 105." *Id.* at 273. The legislative history to section 105 reports:

> The court has ample other powers to stay actions not covered by the automatic stay. Section 105, of the proposed title 11, derived from the Bankruptcy Act § 2a(15), grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity [statutory citations omitted]. Stays or injunctions issued under these other sections will not be automatic upon commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions.... There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon commencement of the case, for reasons of either policy or practicality. *Thus, the court will have to determine whether a particular action which may be harming the estate should be stayed.*

S.Rep. No. 95–989 at 51, 1978 U.S.Code Cong. & Ad.News at 5787, 5837; H.Rep. No. 95–595 at 342, 1978 U.S.Code Cong. & Ad.News at 5963, 6298 (emphasis added); *Penn Terra*, 733 F.2d at 273. The legislative history would support an order from the Bankruptcy Court to enjoin a state injunction in very limited situations.

The exception to the automatic stay under 11 U.S.C. § 362(a)(5) is limited to money judgments. A stay under 11 U.S.C. § 105 is not so limited. It is governed by the broader definition of a claim under the Code. 11 U.S.C. § 101(4).

■ Nevertheless, it is agreed that when the DER acts under its police power or regulatory role and seeks performance or the prevention of future harm to the environment, these police enforcement activities would not be subject to the automatic stay. However, the Commonwealth, by using the police power, cannot collect a pre-petition debt. When the DER requires Norwesco to provide a permanent water supply replacement for the Belmar residents, the DER may be acting for the Belmar residents for compensation for past damages. If so, this would be a dischargeable debt treated in the Chapter 11 plan. The Bankruptcy Court has jurisdiction to decide whether the DER is asserting a claim or is exercising its police power. 11 U.S.C. § 106(c). The proper time to raise this issue was at the confirmation of the plan. The DER chose to ignore that hearing. Now we are confronted with a slightly different problem.

## B. Pennsylvania Oil and Gas Act, Clean Streams Law and the Pennsylvania Constitution

Norwesco has not argued that the DER has acted in violation of Pennsylvania law. Norwesco argues that the DER Order vio-

lates federal bankruptcy statutes. We accept that the DER has acted under Pennsylvania law.[1] Appeals are pending. Relief from stay to decide the claims of the Belmar residents has been granted.

### C. Pre-Petition "Debts" to Compensate for Injury or Loss Are Dischargeable After Confirmation of a Chapter 11 Plan

The drilling and brine contamination were pre-petition. Norwesco argues that there are no ongoing violations. Norwesco argues that the DER Order in large part represents remedies for pre-petition damages and are claims that were treated by the Debtor's confirmed plan. The DER did not participate in the Chapter 11 plan. The DER responds that because its police orders create financial obligations, they are not "claims" in bankruptcy but are valid state police actions involving public health and welfare.

If the DER Order requiring Norwesco to build a replacement water system is held to be a remedy for such a pre-petition "debt" provided for by a confirmed Chapter 11 plan, it will have important consequences for the DER. Section 1141(a) of the Bankruptcy Code provides upon confirmation the debtor and all creditors are bound by the plan, whether or not the individual creditors have accepted the plan or have claims which are impaired under § 1141. See, e.g., *In re White Farm Equipment*, 38 B.R. 718, 724 (N.D.Ohio E.D.1984). The DER is listed as creditor of Norwesco in its petition and in its plan. If Norwesco's duty to DER to construct a water system for the Belmar residents is classified as a pre-petition "debt" or "liability on a claim", these debts may be dischargeable or modified by a confirmed plan. 11 U.S.C. § 1141(d)(1)(A).

### D. Police Powers or a Claim for Past Damages

In *Ohio v. Kovacs, supra,* the Supreme Court held that a state court injunction

---

1.  DER bases its Order on provisions of the Oil & Gas Act ("OGA"), 58 P.S. § 601.101 *et seq.,* enacted on December 19, 1984. Section 201 of OGA requires an oil driller to obtain a permit from DER and pay a permit fee. 58 P.S. § 601.201. This section impliedly allows an oil or gas well within 1,000 feet of water supplies used by the public. 58 P.S. § 601.201(b). Section 207(a) of OGA requires a well operator to control and dispose of brines produced from drilling, alteration or operation of an oil or gas well in a manner consistent with the Clean Streams Law and related rules and regulations. 58 P.S. § 601.207(a). Section 208(a) requires an oil well operator that pollutes a public or private water supply to "restore or replace the affected supply with an alternate source of water adequate in quantity or quality for the purposes served by the supply." 58 P.S. § 601.208(a). After receiving complaints of polluted water, under Section 208(b), DER may issue administrative orders requiring the temporary replacement of a water supply where it determines the pollution to be of limited duration. 58 P.S. § 601.208(b). Violation of § 207 and § 208 of OGA constitutes a public nuisance. 58 P.S. § 601.502. DER has the authority to issue orders necessary to enforce the provisions of OGA. 58 P.S. § 601.503(a). Norwesco has filed with DER a required blanket bond for $25,000 for its well drilling. This bond reflects projected costs to the Commonwealth for well plugging. 58 P.S. § 601.215(a). The bond is forfeited if the well operator does not comply with OGA, DER regulations or the permit. 58 P.S. § 601.215(c).

    DER also claims that Norwesco violated various sections of the Pennsylvania Clean Streams Law ("CSL"), 35 P.S. § 691.1 *et seq.* The stated violations are: a discharge of industrial wastes constituting a nuisance, 35 P.S. § 691.307(c); pollution of state waters, 35 P.S. § 691.401; and unlawful conduct for violating permits, the Clean Streams Law and DER regulations, 35 P.S. § 691.611.

    DER has the statutory authority to enforce various state environmental statutes under the Clean Streams Law, the Oil and Gas Act, and the Administrative Code. These statutes authorize DER to issue administrative orders including the replacement of water supplies affected by activities regulated under the statutes. OGA, 58 P.S. § 601.503(a), and CLS, 35 P.S. § 691.610. Section 510–17 of the Administrative Code empowers DER to abate nuisances detrimental to the public health. 71 P.S. § 510–17(3). The Pennsylvania Constitution provides that the Commonwealth is the trustee of the natural resources common to all people, including clean air, pure water and the preservation of natural resources of the environment. Pa. Const. Art. I, Section 27. For the Commonwealth, through the various state environmental statutes, DER is delegated the protection of these constitutional goals. The Oil and Gas Act, the Clean Streams Law, and Article I, Section 27, of the Pennsylvania Constitution embody the state police power.

requiring the payment of money damages to clean up a hazardous waste disposal site, was a "debt" or "liability on a claim" under Sections 101(4)(B) and 101(11) of the Bankruptcy Code. 11 U.S.C. §§ 101(4)(B) and 101(11). These environmental expenses were claims dischargeable under 11 U.S.C. § 727(b). In a footnote, the Supreme Court distinguished *Penn Terra, Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267 (3d Cir.1984), where the Court of Appeals for the Third Circuit ruled that the automatic stay did not protect a Chapter 7 trustee from complying with Pennsylvania's environmental law. 105 S.Ct. at 711, n. 11. The *Kovacs* Court noted that the Commonwealth Court injunction in *Penn Terra* was an effort to enforce the police power statutes of the state rather than collection of a money judgment. The police powers inherent in environmental protection laws are excepted from the automatic stay under 11 U.S.C. § 362(b)(4) and (5) of the Code.

In *Kovacs*, the state sought a money payment from Kovacs to defray cleanup costs. The cleanup order had been reduced to a money judgment. The state conceded that after a receiver was appointed by state court, the only performance sought from Kovacs was the payment of money. *Id.* at 710. In *Penn Terra*, the Court of Appeals defined a money judgment as:

> ... an order entered by the court or by the clerk, after a verdict has been rendered for plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist only of two elements: (1) an identification of the parties for and against whom judgment is being entered, and (2) a *definite* and *certain* designation of the amount which plaintiff is owed by defendant.

733 F.2d at 275 (emphasis in opinion).

However, the Third Circuit recognized that some actions by a governmental unit may not facially appear to be an enforcement of a money judgment but in substance be an action to obtain and enforce a money judgment. In those situations, it is necessary to look beyond the form of such actions and determine whether the governmental unit is attempting to achieve in actuality what a money judgment was intended to accomplish. The Third Circuit explained further:

> We believe that the inquiry is more properly focused on the nature of the injuries which the challenged remedy is intended to redress—including whether plaintiff seeks *compensation for past damages or prevention of future harm* —in order to reach the ultimate conclusion as to whether these injuries are traditionally rectified by a money judgment and its enforcement.

*Id.* at 278 (emphasis added).

*Penn Terra* was ordered to correct environmental hazards "to prevent future harm to, and to restore, the environment." *Id.* at 278. To reclaim strip mines, the DER obtained an injunction ordering Penn Terra to backfill, grade, and otherwise control erosion and sedimentation. *Id.* at 270, n. 3.

The trustee in *Penn Terra* was totally without funds. The trustee appeared in Bankruptcy Court and attempted to stay the DER and to have them found in contempt. She did not appear in Commonwealth Court. She was not held in contempt by the Commonwealth. The Commonwealth did nothing to enforce their Order on the trustee. The Commonwealth's principal objection was to the Bankruptcy Court Order staying the Commonwealth under 11 U.S.C. § 362.

This case presents several unanswered issues. First, when the DER requires Norwesco to provide a permanent water supply system to the Belmar residents, is this obligation a "debt" or "claim" dischargeable in bankruptcy? Is this financial obligation of Norwesco, although characterized by the Commonwealth as an action under their police power, also subject to classification as a claim under the Bankruptcy Code? Second, is the action or claim of the Commonwealth pending before the EHB distinguishable from the claims of the residents pending in Venango County? Are they different claims? Third, if the cost of re-

placing Belmar's water system would undermine Norwesco's reorganization and force it to liquidate, should the Bankruptcy Court enjoin the DER under Section 105(a) of the Code?

When the DER orders Norwesco to stop action which would contaminate the acquifer and water table, that appears to be within the police power of the Commonwealth. When the DER orders Norwesco to provide a temporary water supply to Belmar Village, such immediate and temporary action involves public health and safety and as a temporary emergency measure appears to be within the police power. When Norwesco is ordered to submit a plan for a permanent water supply, that also appears to be a reasonable exercise of police power.

The Court is not persuaded that the cost of the preparation of a plan would be prohibitive and would threaten the viability of the Chapter 11 plan. It is conceivable that such a water supply plan might provide alternatives acceptable to the DER and at a cost that would not require Norwesco to liquidate. Further, at the hearing, the DER stated that under Pennsylvania case law, Norwesco will not be held in contempt if it is unable to pay for the permanent water supply.

■ These police powers or equitable performance remedies do not represent traditional damages for any past injury. An operating debtor in possession in Chapter 11 must comply with state law. By 28 U.S.C. § 959(b), a debtor is required "to manage and operate the property in his possession according to the requirements of the valid laws of the state in which such property is situated." However, the Third Circuit conceded in *Penn Terra* that:

> ... in some individual situations, the exercise of State power, even for the protection of the public health and safety, may run so contrary to the policy of the Bankruptcy Code that it should not be permitted. The statute provides for such exigencies, however, the bankruptcy court, in its discretion may issue an appropriate injunction, even if the automatic stay is not operative. 11 U.S.C. § 105. 733 F.2d at 273.

In *Matter of Quanta Resources,* 739 F.2d 912 (3d Cir.1984), the Court of Appeals proposed a balancing test of the relative weight of state and federal policies. *Id.* at 921. The state interest law protecting the public health by regulating disposal of toxic wastes outweighed the trustee's interest in preserving as much of the estate as possible for distribution to creditors under the Bankruptcy Code. *Id.*

In compliance with the Chapter 11 plan, the Belmar residents have filed a suit for damages against Norwesco in the Court of Common Pleas, Venango County. Acting on the administrative complaints of almost the same individuals, the DER has ordered Norwesco to build a new water system. Providing an alternate water supply to the residents, by developing new water sources, laying of pipes, etc., sounds compensatory rather than preventive. It sounds in restitution. Although labeled as an equitable action under the police power, these acts may actually be an "attempt to collect money damages."

In *Ohio v. Kovacs, supra,* the Supreme Court rejected the state's argument that because the breach was statutory, it was not also a liability on a claim; that breach of the debtor's obligation did not give rise to a right to payment within the meaning of Section 101(4)(B). "There is no indication in the statute that a right to performance cannot be claimed unless it arises from a contractual arrangement.... [I]t makes little sense to assert that because the cleanup order was entered to remedy a statutory violation, it cannot likewise constitute a claim for bankruptcy purposes. Furthermore, it is apparent that Congress desired a broad definition of a 'claim'...." 105 S.Ct. at 708–709. The DER's Order that Norwesco build a permanent water system for the Belmar residents, although statutory, also may give rise to a right to payment. The Venango County suit manifests such a claim allowed by the plan. Whether all of the matters pending before

the EHB constitute police action or are a claim is not ripe for adjudication.

The parties look to several cases to instruct us. In *Jaffee v. United States*, 592 F.2d 712 (3d Cir.1979), the Court of Appeals considered whether the plaintiff's request for an order requiring medical examinations, care and treatment was a request for an equitable injunction or an attempt to collect money damages. The Court classified this as damages:

> We agree with the government that the request for prompt medical examination and all medical care and necessary treatment, in fact, is a claim for money damages. A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that order the payment of money. Jaffee requests a traditional form of damages in tort—compensation for medical expenses to be incurred in the future.... The payment of money would fully satisfy Jaffee's "equitable" claim for medical care.

*Id.* at 719.

In *United States v. Price*, 688 F.2d 204 (3d Cir.1982), the Court of Appeals held that an order requiring the owner of a landfill to conduct a diagnostic study of the toxic hazards emanating from its property was proper use of the court's equitable powers, even though it required the expenditure of the money. The Court reasoned these were not damages but equitable relief:

> Damages are awarded as a form of substitutional redress. They are intended to compensate a party for an injury suffered or other loss.... The funding of a diagnostic study in the present case, though it would require monetary payments, would be *preventive rather than compensatory*. The study is intended to be the first step in the remedial process of abating an existing but growing hazard which, if left unchecked, will result in even graver future injury, i.e., the contamination of Atlantic City's water supply.
>
> ....

The fact that an injunction may require the payment or expenditure of money does not necessarily foreclose the possibility of equitable relief....

....

Injunctions, which by their terms compel expenditures of money, may similarly be permissible forms of equitable relief.

*Id.* at 212–213 (emphasis added).

■ Neither of the above cases are dispositive. They do not decide the bankruptcy boundaries of a claim. The Bankruptcy Code has its own definition. It is conceded that, absent bankruptcy, the states have broad powers to determine equitable remedies. However, the states cannot construe the police power to defeat the bankruptcy power.

■ Norwesco has not proposed a water supply plan to the DER. Norwesco has not litigated these matters before the EHB or the Venango Court. Until these actions are completed and the final order defined, an injunction is premature.

## CONCLUSION

A Chapter 11 plan, which provides for the claims of the Belmar residents and the DER, has been confirmed. Norwesco is now asking this Court to stay the DER Order based on the Bankruptcy Court's Section 105(a) equity powers, because it duplicates the Belmar claims. This Court has limited discretion under 11 U.S.C. § 105(a) to grant Norwesco's request for a stay of the DER Order. State police power orders (except for money judgments) are excluded from the automatic stay under Sections 362(b)(4) and (5). Section 105(a) does not contain an exception based on state police power, and the definition of a claim which applies to § 105 is broader than money judgment. The Bankruptcy Court has the jurisdiction to decide whether the DER Order constitutes a claim.

However, an injunction is pending under 11 U.S.C. § 105(a). Such equitable relief is extraordinary and should be granted after considering the following factors:

Among the factors which guide the exercise of the courts' equitable discretion are: (1) the probability of irreparable injury to the moving party in the absence of relief; (2) the possibility of harm to the non-moving party if relief is granted; (3) the likelihood of success on the merits; and (4) the public interest.

*United States v. Price*, 688 F.2d 204, 211 (3d Cir.1982).

Norwesco has not met its burden regarding the above factors. The Court does not believe that Norwesco has exhausted its duties and opportunities under state law. Irreparable harm has not been proven. When the Venango Court and the EHB have acted, these issues will be in better focus. The application for the stay is denied at this time.

An appropriate Order will issue.