**In re UNION GOLF OF FLORIDA, INC., Debtor.**

**Bankruptcy No. 95–11307–8G1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 12, 1998.

Scott H. Carter, Assistant County Attorney, Jorge L. Fernandez, County Attorney, Sarasota, Florida, for movant.

Noel K. Evans, Evans & Donica, P.A., Tampa, Florida, for debtor.

## ORDER ON POSTCONFIRMATION MOTION TO AMEND OR, ALTERNATIVELY, TO SET ASIDE SECTION 4.1 OF DEBTOR'S PLAN OF REORGANIZATION AND THE ORDER CONFIRMING SAME

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Postconfirmation Motion to Amend or, Alternatively, to Set Aside Section 4.1 of Debtor's Plan of Reorganization and the Order Confirming Same filed by Sarasota County, Florida, a Political Subdivision of the State of Florida (the County). In the Motion, the County requests that the Court set aside a provision contained in the Debtor's Second Amended Plan of Reorganization, as confirmed, which the Debtor contends is intended to permit the Debtor to operate its golf course as a public golf course rather than a private course, notwithstanding any county zoning ordinances or administrative remedies that may otherwise apply.

### Background

The Debtor currently owns a project located in Sarasota County, Florida, consisting of the Oak Ford Golf Club and a related residential development. The project was initiated in the early 1980's by a corporation known as El Jobean Philharmonic Group, Inc. (El Jobean).

In 1988, while El Jobean owned and was developing the project, a Rezoning Application was submitted to the Board of County Commissioners of Sarasota County, Florida. The specific request contained in the application was "to change the present zoning of this property *from* the OUE I with stipulation District(s) *to* the OUE I without stipulation District(s)." (See Postconfirmation Motion, Exhibit A). An Impact Analysis attached to the Application refers to housing units, a golf course, and a clubhouse. The Board of County Commissioners denied the application.

El Jobean subsequently filed a lawsuit in the Sarasota County Circuit Court to overturn the Board's decision. In November of 1988, El Jobean and the Board of County Commissioners of Sarasota County entered into a Settlement Agreement to resolve the lawsuit. The Settlement Agreement provided:

Rather than issuing a permit to allow construction of a public golf course as requested by Petitioner in Special Exception No. 1158, SARASOTA COUNTY shall issue within twenty (20) days of the date hereof a Special Exception allowing the development of a private golf course and a maximum of 154 units of cluster housing on the property in question.

A footnote follows the term "private golf course," which states:

The term "private golf course" shall mean that the golf course shall not be open to the general public and, instead, shall be open only to its members which shall not exceed 500 persons. During the first four years of operation, the golf course may issue daily memberships provided that the total number of all members do not exceed 500.

(Postconfirmation Motion, Exhibit C). The Settlement Agreement was approved by the state court and adopted into a Stipulated Final Judgment which was entered on November 15, 1988, by the state court. (Postconfirmation Motion, Exhibit E). On December 6, 1988, the Board of County Commissioners of Sarasota County adopted a resolution granting the special exception agreed to in the Settlement Agreement and adopted into the Stipulated Final Judgment. (Postconfirmation

Motion, Exhibit D). The County contends that Sarasota County Zoning Regulations would not have allowed El Jobean to construct the golf course on its property without the issuance of this special exception.

The Debtor acquired the project in the early 1990's. The property acquired by the Debtor included a twenty-seven hole golf course and approximately 145 unsold residential lots.

The Debtor filed its petition under chapter 11 of the Bankruptcy Code in California on June 2, 1995. On October 4, 1995, the case was transferred to the Bankruptcy Court for the Middle District of Florida.

On November 20, 1996, while the chapter 11 case was pending, the Debtor filed an Application for Rezoning/Special Exception with the Sarasota County Planning Department. (Postconfirmation Motion, Exhibit H). Exhibit "B" to the Application states:

> This Special Exception Application is actually a request to amend one condition in a Special Exception previously granted by the Board of County Commissioners in Resolution No 88–681 granting Special Exception Petition 1158. The condition sought to be amended is set out in Stipulation No. F in Resolution No. 88–681 which provides as follows:
>
> "As a 'private golf course' the golf course shall not be open to the general public and, instead, shall be open only to its members which shall not exceed 500 persons . . . ."
>
> Experience of the last six years conclusively demonstrates that the Oak Ford golf course cannot survive as a members only golf course.
>
> . . . . .
>
> Accordingly the applicant respectfully requests that the Board of County Commissioners delete Stipulation No. F from Resolution No. 88–681 and allow the Oak Ford Golf Course to operate as a public golf course.
>
> . . . . .

On February 5, 1997, the Debtor filed its Second Amended Plan of Reorganization and Disclosure Statement.

Article 2 of the Second Amended Plan is entitled "Treatment of Administrative Expense Claims and Tax Claims." Administrative expense claims "consist primarily of claims for legal services provided by the attorney for the Debtor and Creditors Committee, real estate taxes incurred during administration of the case, real estate broker commissions, and fees of other professionals."

Article 3 of the Second Amended Plan is entitled "Designation and Treatment of Claims and Interests that Are Impaired under the Plan." Three classes of claims are identified under Article 3. Class 1 consists of the secured claims of Indian Creek Ventures. Class 2 consists of general unsecured claims, estimated to total approximately $800,000. Class 3 consists of the claims of equity interest holders.

Article 4 of the Second Amended Plan is entitled "Means of Execution of Plan." Subparagraph 4.1 of Article 4 provides:

4.1 *Continuation of Business.*

> The golf course shall remain a public golf course and shall not become a private course. Any creditor or other party in interest or entity receiving a copy of this Plan shall not be entitled to administrative or court proceedings to establish the course as a private course or otherwise not open to the public.

The remainder of Article 4 relates to the determination of claims, revestment of property of the Debtor upon the effective date of the Plan, dismissal of the Debtor's companion case, Diamond Teal, Inc., and the funding of the Plan.

The Debtor's Second Amended Disclosure Statement was filed on the same date as the Plan. On page 58, in a "Summary of Other Provisions of the Plan," the disclosure statement contains a statement which essentially mirrors the provisions of

the Plan regarding the public operation of the golf course.

The Order Approving the Debtor's Second Amended Disclosure Statement was entered on February 27, 1997.

On March 13, 1997, the Debtor filed its Certificate of Service evidencing service of the Order Approving Disclosure Statement, the Debtor's Second Amended Disclosure Statement, and the Debtor's Second Amended Plan of Reorganization. The "Sarasota County Government, Natural Resources Department" and the "Sarasota County Appraisers Office" appear on the list of the names and addresses of the parties receiving service of the Debtor's Plan. The Office of the County Attorney is reflected on the list, but the entry appears to have been manually stricken. The Board of County Commissioners of Sarasota County does not appear on the service list, nor does the chairman of that board.[1]

The confirmation hearing was conducted in this case on May 12, 1997, and an Order confirming the Debtor's Second Amended Plan of Reorganization was entered on June 4, 1997.

On June 12, 1997, a hearing was conducted by the Board of County Commissioners on the Debtor's Application for Rezoning/Special Exception, by which the Debtor had requested that the Board of County Commissioners allow the Oak Ford Golf Course to operate as a public golf course. The minutes of the meeting reflect that a representative of the Debtor was present at the hearing and participated in the hearing. Following discussion of the request, the Board of County Commissioners voted to deny the Debtor's Application for Rezoning/Special Exception. (Postconfirmation Motion, Exhibit I).

Following the denial of the Debtor's Application for Rezoning by the Board of County Commissioners, Sarasota County commenced a code enforcement action against the Debtor based on its operation of a public golf course in violation of the county zoning regulations and also in violation of the Special Exception issued pursuant to the Settlement Agreement.

In response, the Debtor has taken the position that the terms of the Second Amended Plan, as confirmed, established the course as a public golf course, and that the County's proceedings to prohibit the operation of the golf course as a public course are therefore enjoined by the confirmed Plan.

The County filed its Postconfirmation Motion to Amend or, Alternatively, to Set Aside Section 4.1 of Debtor's Plan of Reorganization and the Order Confirming Same on October 10, 1997. At the hearing conducted on the Motion on November 24, 1997, the County asserted that it was entitled to an order setting aside paragraph 4.1 of the confirmed Plan for the following reasons:

1. Enforcement of paragraph 4.1 would violate the separation of powers doctrine, since zoning is a legislative function rather than a judicial function.

2. The state court Final Judgment which incorporated the settlement agreement with the Board of County Commissioners should be given effect based on the doctrines of full faith and credit, comity, and res judicata.

3. The Bankruptcy Court lacks subject matter jurisdiction over this issue, since the County's involvement is not a "claim" in the bankruptcy case, zoning is a state and local issue, and no federal question exists.

4. The procedure by which paragraph 4.1 was included in the confirmed Plan violated the due process requirements associated with rezoning, since interested parties such as neighboring landowners were not provided with notice and an opportunity to be heard.

5. The Debtor recognized that a rezoning of the property could be achieved

---

1. See Fla.Stat. § 48.111.

only through proceedings in Sarasota County, as shown by the Debtor's employment of special counsel for the specific purpose of "obtaining a rezoning special exception for the subdivision and golf course." According to the County, this employment of special counsel would be superfluous if county proceedings are superseded by the contents of the Plan of Reorganization.

6. Paragraph 4.1 exceeds the scope of section 1123 of the Bankruptcy Code and the plan provisions that are permitted or required thereunder, because it does not merely alter contract obligations between the Debtor and its creditors, but actually purports to change local law regarding the Debtor's property.

7. Paragraph 4.1 exceeds the scope of section 1141 of the Bankruptcy Code because the County is not a creditor, equity holder, or other entity bound by a confirmed plan as listed in that section.

If the Debtor is permitted to operate its golf course as a public course, the County contends that "in effect, the Bankruptcy Court, through its confirmation of the plan of reorganization has rezoned the Debtor's property." (Transcript, Hearing on Postconfirmation Motion to Amend, November 24, 1997, p. 7.) The County asserts that such rezoning violates Florida law and is not authorized by the Bankruptcy Code.

The Debtor contends that the confirmed Plan conclusively establishes the golf course as a public course, that the County is bound by the provisions of the confirmed Plan, and that any proceedings by the County to enforce the limitations contained in the prior Special Exception would constitute a violation of the Bankruptcy Court order and the Bankruptcy Code. In support of these contentions, the Debtor asserts:

1. The County was adequately served with the Second Amended Plan prior to the confirmation hearing and failed to object to the inclusion of paragraph 4.1 in the Plan. According to Debtor's counsel, who had reviewed the mailing list used by the outside mail service, copies of the Second Amended Plan were mailed to the Department of Revenue, the Sarasota County Tax Collector, the "Sarasota County Government," the Sarasota County Appraisers Office, and the attorney for Sarasota County. (Transcript, p. 34).

2. The County is not procedurally entitled to challenge the order of confirmation because the motion was filed more than four months after the order was entered, after the time had expired for filing a motion for rehearing. Additionally, to the extent that the County is seeking the revocation of the order of confirmation, section 1144 of the Bankruptcy Code provides that such an order may be revoked only if it was procured by fraud. The Debtor claims that the County has not set forth any basis to establish fraud in this case.

3. The County is barred from challenging the order of confirmation by the doctrine of issue preclusion. The Debtor primarily relies on the decision of the Eleventh Circuit Court of Appeals in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir.1990), to support this contention. In *Justice Oaks*, the Court held that the four elements of claim preclusion were present in an order confirming a chapter 11 plan. Specifically, (1) the Bankruptcy Court had jurisdiction; (2) the order constituted a final judgment on the merits; (3) the parties had a full and fair opportunity to object to confirmation; and (4) the claims asserted postconfirmation are the same claims that could have been asserted at the time of confirmation. The Debtor contends that each of these elements is present in the case under consideration, and that the County is precluded from challenging the terms of the confirmed Plan because it failed to object to confirmation after having received notice thereof.

4. The Debtor argues that paragraph 4.1 does not effectuate a "rezoning" of the property because the initial four year term to operate the golf course as a public course, as authorized by the Special Exception, expired in approximately 1992. The Debtor continued to operate the course as a public course through mid–1997, however, without objection by the County. Consequently, the Debtor views paragraph 4.1 as simply preserving the status quo with respect to the golf course's public operation.

Finally, Indian Creek Ventures, the primary secured creditor in this case, also appeared at the hearing to oppose the County's Postconfirmation Motion. Indian Creek Ventures supported the Debtor's position that the County's claims are barred by res judicata, or issue preclusion as set forth in *Justice Oaks*, since those doctrines apply to all claims that could have been presented at confirmation. Additionally, Indian Creek contends that the County cannot satisfy the requirements of section 1144 regarding revocation of an order of confirmation, since fraud must be found before such an order can be revoked after the initial rehearing period has passed. Also, in the six months since the order of confirmation was entered, third parties have changed their position in good faith reliance on the order, and these parties cannot be protected as required by subsection 1144(1).

## Discussion

■ Although a number of approaches could be considered for the analysis of this motion, the broad issue underlying the dispute is whether the provision in the confirmed chapter 11 plan, which affects a land use exception, is binding on the local authority charged with land use regulation, where the local authority did not object to confirmation of the plan.

Section 1141 of the Bankruptcy Code provides:

### § 1141. Effect of confirmation

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

Consequently, this section identifies six specific parties that are bound by a confirmed plan: (1) the debtor; (2) entities issuing securities under the plan; (3) entities acquiring property under the plan; (4) creditors; (5) equity holders; and (6) general partners in the debtor.

It is clear in this case that the County is not an entity issuing securities or acquiring property under the Plan, and also that the County is not an equity holder or general partner of the Debtor. The only designation under section 1141 that might apply to the County is that of "creditor."

A "creditor" is defined in section 101(10) of the Bankruptcy Code as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," an entity that has a claim against the estate which falls within certain specified types, or an entity that has a community claim. "Claim" is defined in section 101(5) of the Bankruptcy Code, and is generally a "right to payment."

The Bankruptcy Court discussed the application of section 1141 in *In re Food City, Inc.*, 110 B.R. 808 (Bankr.W.D.Tex. 1990). In that case, a chapter 11 plan potentially violated the federal securities laws, the plan was confirmed, and a motion was filed to reconsider the confirmation order. The moving party was concerned that the order of confirmation would operate as a "clean bill of health" which would bar subsequent enforcement of the securi-

ties laws against the debtor. *In re Food City*, 110 B.R. at 813. The Court determined that section 1141 does not protect debtors from postconfirmation actions to enforce valid laws, even if the alleged violation arose from the terms of the confirmed plan itself. *Id.* The Court found that any such violation would not constitute a "claim" against the estate and that the party enforcing the law would not be a "creditor" bound by the confirmed plan under section 1141(a).

> Sound policy reasons buttress this conclusion. Were it otherwise, the failure of regulatory authorities to raise a violation of the laws they are charged with enforcing at the confirmation hearing could well bar their assertion at a later date in another forum under principles of res judicata.... Such a rule would place an onerous and unnecessary burden on the debtor, on those charged with enforcing laws and on the court.

*Id.* Consequently, the Court concluded that regulatory entities are not barred by an order of confirmation from enforcing the laws with which they are charged, *even if the alleged violation occurs pursuant to the provisions of the confirmed plan. Id.*

The Bankruptcy Court in *In re Norwesco Development Corporation*, 68 B.R. 123 (Bankr.W.D.Pa.1986) reached a similar conclusion. In that case, a prepetition state court order required the debtor to provide a permanent water supply to certain homeowners harmed by the debtor's oil drilling operations. The debtor's confirmed chapter 11 plan treated the obligation as an unsecured claim to be paid by the debtor's liability insurer. *In re Norwesco*, 68 B.R. at 124. The Department of Environmental Resources (DER), however, sought to enforce the terms of the prior state court order. The issue was whether the action to enforce the prior order amounted to the assertion of a "claim" by the DER, which would be prohibited by section 1141(a) of the Bankruptcy Code, or whether the enforcement action constituted a valid exercise of the DER's police power. *Id.* at 128. The Bankruptcy Court first found that it had the jurisdiction to determine whether the DER was asserting a "claim" or exercising its police power. *Id.* at 126. The Bankruptcy Court then concluded that the action was a reasonable exercise of police power, that such police powers or performance remedies do not represent traditional damages for past injury, and that the enforcement action therefore should not be stayed. *Id.* at 129–31.

The Bankruptcy Court in *Norwesco* also relied on 28 U.S.C. § 959(b) to support its conclusion that the enforcement action should not be stayed. That section provides:

**§ 959. Trustees and receivers suable; management; State laws**

. . . . .

(b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, *including a debtor in possession,* shall manage and operate the property in his possession as such trustee, receiver or manager *according to the requirements of the valid laws of the State in which such property is situated,* in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

(Emphasis supplied). "An operating debtor in possession must comply with state law." *In re Norwesco*, 68 B.R. at 129.

The First Circuit Court of Appeals addressed 28 U.S.C. § 959 in the specific context of local zoning ordinances in *In re Cournoyer v. Town of Lincoln*, 790 F.2d 971 (1st Cir.1986). In that case, the town of Lincoln, Rhode Island (the Town) began to remove used truck parts from the debtor's property to enforce a local zoning ordinance. The issue in the case was whether the action violated the automatic stay imposed by section 362 of the Bankruptcy Code. In determining that the Town did not violate the automatic stay,

the First Circuit Court of Appeals made two findings that are relevant to the case at bar. First, the Court specifically found that the exercise and enforcement of zoning laws constitute governmental action within the governing body's "police or regulatory power" under section 362. Second, the Court found that section 959(b), as quoted above, reflects the clear intent that the bankruptcy court and the automatic stay "should not be used as a shield against the application and enforcement of valid state and local laws." *In re Cournoyer,* 790 F.2d at 977.

A previous case also dealt with the impact of zoning ordinances in chapter 11 cases. In *In re Cousins Restaurants, Inc.,* 11 B.R. 521 (Bankr.W.D.N.Y.1981), a chapter 11 debtor operated a nightclub in violation of a local zoning law which required a special permit for such an operation. After it filed its bankruptcy petition, the debtor filed a motion to enjoin the enforcement of the zoning ordinance. The Bankruptcy Court denied the debtor's motion, finding that specific procedures to obtain the permit, including a public hearing, were in place and available to the debtor, and that the debtor's due process rights were further protected by the availability of a remedy in state court if aggrieved by the local law. *In re Cousins,* 11 B.R. at 522. In reaching this decision, the Court also relied on the statutory provision regarding the removal of actions to the bankruptcy court. The section provides:

**§ 1452. Removal of claims related to bankruptcy cases**

(a) A party may remove any claim or cause of action in a civil action *other than* a proceeding before the United States Tax Court or *a civil action by a governmental unit to enforce such governmental unit's police or regulatory power,* to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(Emphasis supplied). As stated by the court in *Cousins,* this statute, or its predecessor, 28 U.S.C. § 1478(a), "prohibits the removal to a Bankruptcy Court of an action dealing with a governmental unit's police or regulatory power." *In re Cousins,* 11 B.R. at 522. The statute reflects "a Congressional deference to states and a policy not to permit the bankruptcy laws to interfere too greatly with state regulatory or police power proceedings." *Id.* To permit a debtor to include in its plan an injunction against the enforcement of a government's police power is essentially a de facto removal of the action to the Bankruptcy Court, which removal is expressly prohibited by 28 U.S.C. § 1452(a).

 The authorities discussed above establish several general principles. First, a chapter 11 debtor is obligated to comply with the laws of the state in which it holds property. (28 U.S.C. § 959(b)). Second, a governmental unit's exercise of its police or regulatory power is not stayed after a chapter 11 petition has been filed. (Section 362(b)(4); *In re Cournoyer, supra* ). Third, the action of a governing body to enforce its police power may not represent a "claim" against the debtor, so that the governing body is not a "creditor" within the meaning of section 1141 of the Bankruptcy Code, and the action therefore is not barred by an order confirming a chapter 11 plan. (Section 1141(a); *In re Food City, supra*). Fourth, zoning laws constitute examples of a governing body's police or regulatory power. (*In re Cournoyer, supra*). Finally, all of the above principles reflect an overriding congressional intent that the Bankruptcy Court should not interfere with the valid exercise of a state's police power. (*In re Cousins, supra*). In fact, even if an action to enforce a governmental unit's police power is commenced against a debtor in another forum, the debtor is prohibited from removing the action to the bankruptcy court. (28 U.S.C. § 1452(a)).

The District Court's opinion in *In re Baker & Drake, Inc.,* 1992 WL 682764

(D.Nev.) connects these various principles and is directly applicable to the case at bar. The state law at issue in *Baker* was the Nevada Administrative Code (NAC), which contains a provision prohibiting taxicab companies from engaging their drivers as independent contractors. The provision is designed to protect the public health, safety, and welfare. *In re Baker*, 1992 WL 682764, at *2. The debtor's chapter 11 plan permitted the debtor, a taxicab company, to hire its drivers as independent contractors and enjoined Nevada's Public Service Commission and other state and local authorities from enforcing the NAC. The Bankruptcy Court confirmed the plan and enjoined the state authorities from enforcing the provision of the NAC cited above. The order confirming the plan was appealed to the District Court. *Id.* at *1.

On appeal, the District Court determined that the provisions of the NAC could not be "preempted" by the Bankruptcy Code.

> This court finds nothing in the Bankruptcy Code which grants the authority to the bankruptcy court to authorize acts in contravention of a state statute or regulation that is reasonably necessary to protect the public health or safety from identified hazards.

*Id.* at *3. The District Court set aside the portion of the debtor's confirmed plan relating to the employment of drivers as independent contractors, and vacated the injunction against enforcement of the NAC. *Id.*

Finally, the decision of the Eleventh Circuit Court of Appeals in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir.1990) is not dispositive of this case. The Debtor cited *Justice Oaks* to support its position that the County is barred by the doctrine of res judicata from seeking to prohibit the Debtor from operating its golf course as a public course. The Debtor relied on the Eleventh Circuit's finding that all four elements of "claim preclusion" were present in an order confirming a chapter 11 plan.

In *Justice Oaks*, however, the parties challenging the order of confirmation had been recognized as potential claimants in the chapter 11 case since its commencement, had actively participated in the case, and had been party to prior orders entered by the bankruptcy court while the case was pending. Consequently, the Eleventh Circuit's findings with respect to the "identity of the parties," the "identity of the issues," and the "full and fair opportunity to litigate" arose in a factual and procedural context that is readily distinguishable from the case under consideration.

### Application

Article VIII, Section 1(a) of the Florida Constitution provides that Florida "shall be divided by law into political subdivisions called counties." Section 1(e) of Article VIII provides that "the governing body of each county shall be a board of county commissioners." Section 125.01 of the Florida Statutes provides that "[t]he legislative and governing body of a county shall have the power to carry on county government." The specific powers of the board of county commissioners include the power to "[p]repare and enforce comprehensive plans for the development of the county," and to "[e]stablish, coordinate and enforce zoning and such business regulations as are necessary for the protection of the public." Fla.Stat. § 125.01(1)(g), (h).

The County's administration of the zoning laws in Sarasota County, therefore, is a statutorily authorized exercise of its power. The administration of the laws is within the police or regulatory power of the County, or for the "protection of the public."

The County is not bound under section 1141(a) by the terms of the confirmed plan in this case. The Debtor's violation of the County's zoning ordinance and the Special Exception did not create a "claim" against the estate within the meaning of section 101(5) or section 101(10) of the Bankruptcy Code. See *In re Food City*, 110 B.R. at 813. Consequently, the County is not a

"creditor" of the Debtor, and therefore is not a party designated in section 1141(a) as bound by a confirmed plan.

Additionally, the Board of County Commissioners is not a "creditor" of the Debtor within any traditional meaning of the term, and has not been treated as a creditor by the Debtor. The Settlement Agreement entered in November of 1988 provides for extensive performance obligations and specifications regarding the development of the golf course and residential subdivision, but does not provide for any monetary or other remedies upon default by either party under the Agreement. The Debtor's Second Amended Plan does not treat the County as a claimant in any separate classification, and the County is not identified as a member of class 3, the class of general unsecured creditors. The provision of the Plan which purports to enjoin any entity from seeking to establish the golf course as a private course does not appear in the section of the Plan dealing with the designation and treatment of claims.

The Court finds that the County is not a party bound under section 1141 of the Bankruptcy Code by the Debtor's Second Amended Plan or the Order confirming the Plan. This finding is consistent with the prevailing policies of the Bankruptcy Code that Bankruptcy Courts should not interfere with the enforcement of valid state and local laws or with the exercise of a local government's police power.

Accordingly:

**IT IS ORDERED** that:

1. The Postconfirmation Motion to Amend or, Alternatively, to Set Aside Section 4.1 of the Debtor's Plan of Reorganization and the Order Confirming Same filed by Sarasota County, Florida, is granted as provided in this order. The motion is denied to the extent that it seeks to set aside the Debtor's plan of reorganization and this Court's order confirming the plan.

2. Section 4.1 of the Debtor's Second Amended Plan of Reorganization shall not prohibit Sarasota County from commencing or continuing any proceeding to enforce Sarasota County's zoning regulations with respect to property of the Debtor, and shall not otherwise operate as an injunction against any action by Sarasota County to enforce any county or state law or regulation.